**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
EASTERN DIVISION**

| | | |
|---|---|---|
| TIMOTHY BROWDER, | ) | |
| | ) | |
| Plaintiff, | ) | 1:05cv10462 |
| | ) | Magistrate Judge Bowler |
| v. | ) | Filed 3/10/05 |
| | ) | |
| OSI COLLECTION SERVICES, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S UNOPPOSED MOTION FOR LEAVE
TO FILE AN AMENDED COMPLAINT, *INSTANTER***

Plaintiff Timothy M. Browder respectfully requests, pursuant to Fed.R.Civ.P. 15, that the Court grant him leave to file an Amended Complaint, *instanter* in Case No.1:05cv10462, so that he may add 93A class claims.  A copy of the proposed Amended Complaint in the above-referenced case is attached as Appendix A.

In support of this motion, Plaintiff states as follows:

1.    Plaintiff originally brought this class action against defendant OSI Collection Services, Inc. ("OSI") to recover damages for violation of the Fair Debt Collection Practices Act, 15 U.S.C. §1692 et seq. ("FDPCA").

2.    Plaintiff now seeks to assert an additional claim against OSI pursuant to Mass. G.L., ch. 93A, §9.

3.    Leave to amend a party's pleading "shall be freely given when justice so requires."  Fed.R.Civ.P. 15(a); Foman v. Davis, 371 U.S. 178, 83 S.Ct. 227 (1962).

4.    The Amended Complaint does not prejudice OSI.

5.    Plaintiff, through counsel, has conferred in good faith with counsel for

OSI and defendant does not object to the filing of this motion.

WHEREFORE, Plaintiff respectfully requests, pursuant to Fed. R. Civ. P. 15 that the Court grant leave to file an Amended Complaint in Case No. 1:05cv10462, so that he may add 93A class claims.

Respectfully submitted,


 s/ Francis R. Greene
Francis R. Greene


Daniel A. Edelman
Cathleen M. Combs
James O. Latturner
Francis R. Greene
EDELMAN, COMBS, LATTURNER
      & GOODWIN, LLC
120 S. LaSalle Street, 18th floor
Chicago, Illinois  60603
(312) 739-4200
(312) 419-0379 (FAX)

Christopher M. Lefebvre
LAW OFFICES OF CLAUDE
      LEFEBVRE & SONS
Two Dexter Street
Pawtucket, RI  02860
(401) 728-6060
(401) 728-6534 (FAX)
B.B.O. # 629056

## **RULE 7.1 CERTIFICATION**

I, Francis R. Greene, hereby certify that I have conferred in good faith with counsel for OSI Collection Services, Inc. regarding this Motion. Defendant's counsel did not object to the filing of this motion during our conference.


 s/ Francis R. Greene
Francis R. Greene

## CERTIFICATE OF SERVICE

I, Francis R. Greene, hereby certify that on September 6, 2005, a copy of the foregoing Plaintiff's Motion for Leave to File an Amended Complaint, *Instanter* was filed electronically and notice was electronically sent to the following parties:

William T. Bogaert
bogaertw@wemed.com

Mark R. Freitas
freitasm@wemed.com

      s/Francis R. Greene
      Francis R. Greene
      EDELMAN, COMBS, LATTURNER
          & GOODWIN, LLC
      120 S. LaSalle Street, 18th Floor
      Chicago, IL 60603
      (312) 739-4200
      (312) 917-0379 (FAX)
      fgreene@edcombs.com

# APPENDIX A

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS
## EASTERN DIVISION

| | | |
|---|---|---|
| TIMOTHY BROWDER, | ) | |
| | ) | |
| Plaintiff, | ) | 1:05cv10462 |
| | ) | Judge Wolf |
| v. | ) | Filed 3/10/05 |
| | ) | |
| OSI COLLECTION SERVICES, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## AMENDED COMPLAINT – CLASS ACTION

### INTRODUCTION

1.     Plaintiff Timothy Browder brings this action to secure redress against unlawful collection practices engaged in by defendant OSI Collection Services, Inc.  Plaintiff alleges violation of the Fair Debt Collection Practices Act, 15 U.S.C. §1692 et seq. ("FDCPA"), and state law.

### JURISDICTION AND VENUE

2.     This Court has jurisdiction under 28 U.S.C. §§1331, 1337 and 1367 and 15 U.S.C. §1692k (FDCPA).  Venue in this District is proper because defendant does business in this District and because defendant's collection letters were sent into the District.

### PARTIES

3.     Plaintiff is a resident of Chestnut Hill, MA.

4.     Defendant OSI Collection Services, Inc. is a Delaware corporation that does business in Massachusetts. Its registered agent and office are CT Corporation System, 101 Federal Street, Boston, MA 02110.

5.     OSI Collection Services, Inc. operates a collection agency.  It is one of the largest collection agencies in the United States.

6.     OSI Collection Services, Inc. regularly collects consumer debts allegedly owed to others.

1

7.    OSI Collection Services, Inc. is a "debt collector" as defined in the FDCPA.

## FACTS

8.    On July 13, 2004, defendant OSI Collection Services, Inc. sent plaintiff a collection letter, attached as Exhibit A.

9.    The letter sought to collect an alleged defaulted debt incurred for personal, family or household purposes.

10. On information and belief,    Exhibit A is a form letter. It has bar-coded addresses and return addresses, a feature which entitles the sender to a discount from the Postal Service when sending pre-sorted, identical mailings. It also has form numbers.

11.    Exhibit A represents that the alleged debt includes "interest: $0.00."

12.    The statement that the alleged debt includes $0.00 interest is not accurate.

13.    The amount of unpaid finance charges or interest included in the alleged debt on July 13, 2004 was in excess of zero, as shown by Exhibit B.

14. The amount of interest inserted in the form letter represented by    Exhibit A is determined according to a standardized, computerized methodology employed by OSI.

15. All letters in the form represented by    Exhibit A misstate the amount of interest included in the debt.

16. Misstating the amount of interest included in the debt has several harmful effects on the debtor:

a.    The debt is likely, if properly characterized, to consist of a modest amount of principal and a large amount of interest. Some judges might balk at enforcing such a debt. (Exhibit C) In any event, debtors are more likely to be willing to pay "principal" than a debt consisting largely of interest and fees, particularly years after the fact.

b.    The writeoff by the owner of the credit card account of amounts paid to merchants for goods or services or disbursed to the cardholder as cash advances has different tax consequences than not collecting interest. The writeoff of amounts paid for goods or services or

2

disbursed as cash advances may constitute income, if the debtor is solvent and the debt uncontested. Not collecting interest has no tax consequences for the debtor. See instructions for IRS form 1099-C (Exhibit D). Debt collectors often use the threat of adverse tax treatment as a collection device, and the misstatement magnifies the impact of such threats.

        c.    Debt collectors frequently quote a large amount and then offer a "settlement" of x% of the amount "due." If the quoted amount is inflated through the addition of unauthorized interest, the benefits of the "settlement" are in substantial part illusory.

### COUNT I – FDCPA

17.    Plaintiff incorporates paragraphs 1-16.

18.    The misstatement of the amount of interest included in the debt violates the FDCPA as constituting a "false, deceptive, or misleading representation or means in connection with the collection of any debt" (§1692e), a false representation of the "character" of any debt (§1692e(2)(A)), and "use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer" (§1692e(10)). "It is unfair to consumers under the FDCPA to hide the true character of the debt, thereby impairing their ability to knowledgeably assess the validity of the debt." Fields v. Wilber Law Firm, 383 F.3d 562 (7th Cir. 2004).

### CLASS ALLEGATIONS

19.    Plaintiff brings this action on behalf of a class pursuant to Fed.R.Civ.P. 23(a) and 23(b)(3).

20. The class consists of (a) all individuals in Massachusetts, (b) to whom defendant sent a letter (c) representing that the interest was an amount other than the full amount of unpaid interest or finance charges included in the amount sought to be collected, (d) which letter was sent on or after March 10, 2004 and (e) before March 30, 2005.

21.    The class is so numerous that joinder of all members is not practicable. On information and belief, there are at least 40 members of the class.

22.    There are questions of law and fact common to the class members, which common questions predominate over any questions relating to individual class members. The predominant common question is whether Exhibit A violates the FDCPA.

23. Plaintiff's claim is typical of the claims of the class members. All are based on the same factual and legal theories.

24. Plaintiff will fairly and adequately represent the class members. Plaintiff has retained counsel experienced in class actions and FDCPA litigation.

25.    A class action is superior for the fair and efficient adjudication of this matter, in that: (a) Individual actions are not economically feasible; (b) Members of the class are likely to be unaware of their rights; and (c) Congress intended class actions to be the principal enforcement mechanism under the FDCPA.

WHEREFORE, the Court should enter judgment in favor of plaintiff and the class members and against defendant for:

        a.    Statutory damages;

        b.    Attorney's fees, litigation expenses and costs of suit;

        c.    Such other and further relief as the Court deems

proper.

## COUNT II -- MASS. G.L., CH. 93A

26.    Plaintiff incorporates paragraphs 1-25.

27.    The violation of the FDCPA complained of above is also a violation of Mass. G.L., ch. 93A, §9.

## CLASS ALLEGATIONS

28. Plaintiff brings this claim on behalf of a class.

29. The class consists of (a) all individuals in Massachusetts, (b) to whom defendant sent a letter (c) representing that the interest was an amount other than the full amount of unpaid interest or finance charges included in the amount sought to be collected,

4

(d) which letter was sent on or after March 10, 2001 and (e) before March 30, 2005.

30. The class is so numerous that joinder of all members is impracticable.

31.    There are questions of law and fact common to the class members, which common questions predominate over any questions relating to individual class members. The predominant common question is whether <u>Exhibit A</u> violates the FDCPA and thus ch. 93A.

32. Plaintiff's claim is typical of the claims of the class members. All are based on the same factual and legal theories.

33. Plaintiff will fairly and adequately represent the class members. Plaintiff has retained counsel experienced in class actions and FDCPA litigation.

34. A class action is superior for the fair and efficient adjudication of this matter, in that:

a.    Defendant has inflicted similar injuries to a large number of persons through a single course of conduct;

b.    Individual actions are not economical;

c.    Debtors may not realize that defendant's statement is false.

WHEREFORE, plaintiff requests that the Court enter judgment in favor of the plaintiff and the class members and against defendant for:

(1)    Statutory damages of $25 per letter, trebled to $75;

(2)    Attorney's fees, litigation expenses and costs of suit;

(3)    Such other or further relief as the Court deems proper.

Respectfully submitted,

s/Daniel A. Edelman
Daniel A. Edelman

5

Daniel A. Edelman
Cathleen M. Combs
James O. Latturner
Francis R. Greene
EDELMAN, COMBS, LATTURNER
    & GOODWIN, LLC
120 S. LaSalle St., Suite 1800
Chicago, IL 60603
(312) 739-4200
(312) 419-0379


Christopher M. Lefebvre
LAW OFFICES OF CLAUDE
LEFEBVRE & SONS
Two Dexter Street
Pawtucket, RI  02860
(401) 728-6060
(401) 728-6534 (FAX)
B.B.O. # 629056


## JURY DEMAND


Plaintiff demands trial by jury.


s/Daniel A. Edelman
Daniel A. Edelman


J:\case\osi-browder12.802\pleading\amdcmplt.wpd

# EXHIBIT A

OSI Collection Servi.
800-280-3377

OSI 102 2656375(474) 03 PM
P.O. BOX 983
BROOKFIELD WI 53008-0983

| CREDITOR: |
| AMERICAN EXPRESS COM. .NY |

| ACCOUNT #: |
| 2656375 |
| 3711511621471009 |
| DATE: |
| JULY 13, 2004 |
| AMOUNT: |
| $18,869.95 |
| INTEREST: |
| $0.00 |
| TOTAL DUE: |
| $18,869.95 |

TIMOTHY BROWDER
163 GERRY RD
CHESTNUT HILL MA 02467-3185

## COLLECTION NOTICE

Dear Timothy Browder,

Our client is American Express Company. They have reported to us that as of today, you owe them $18,869.95. Per the Cardmember Agreement, this balance may not include interest and fees associated with the current billing cycle.

**This is an attempt to collect a debt and any information obtained will be used for that purpose. This communication is from a debt collector.**

Make your check or money order payable to OSI Collection Services, Inc. and mail it in the enclosed envelope.

NOTICE: SEE REVERSE SIDE FOR IMPORTANT INFORMATION.

If you have a reason for withholding payment, we suggest you contact us as explained on the reverse side of this letter.

## NOTIFICACION DE COBRANZA  DCSD#5028
CLS 8/14/04

Estimado(a) Timothy Browder,

Por medio de la presente le notificamos que nuestro cliente es American Express Company. Esta compañía nos ha informado que hasta esta fecha usted les debe la cantidad de $18,869.95. De acuerdo al Acuerdo de Miembro de Tarjeta, este balance indicado en esta notificación quizá s no contenga el interés y los cargos asociados con el presente ciclo de factura.

**Este es un intento de cobrar una deuda y cualquier información que se obtenga será usada para ese propósito. Esta comunicación viene de un recaudador de deudas.**

Gire su cheque o giro postal a la orden de OSI Collection Services, Inc. y envíelo en el sobre adjunto.

NOTIFICACION: VEA EL REVERSO PARA LEER INFORMACION IMPORTANTE.

Si usted tiene alguna razón por la cual no ha mandado su pago, le sugerimos que nos llame o nos escriba según la explicación en el reverso de esta carta.

1256 Park Street, Suite 201, Stoughton, MA 02072, (781) 344-2682. Office Hours: Monday - Thursday 8:00 a.m. to 9:00 p.m., Friday 8:00 a.m. to 5:00 p.m. and Saturday 8:00 a.m. to 12:00 p.m.

This collection agency is licensed by the Office of the Administrator of the Division of Banking, P.O. Box 7876, Madison, Wisconsin 53707.

⬇ Detach Here ⬇

*Important:*
To insure proper credit, please return this portion to the address shown below with your payment.

OSI COLLECTION SERVICES, INC.
P.O. BOX 983
BROOKFIELD WI 53008

| CREDITOR: |
| AMERICAN EXPRESS COMPANY |

| ACCOUNT #: |
| 2656375 |
| 3711511621471009 |
| DATE: |
| JULY 13, 2004 |
| AMOUNT: |
| $18,869.95 |
| INTEREST: |
| $0.00 |
| TOTAL DUE: |
| $18,869.95 |

TIMOTHY BROWDER
163 GERRY RD
CHESTNUT HILL MA 02467-3185

WE ARE A PROFESSIONAL COLLECTION AGENCY ATTEMPTING TO COLLECT A DEBT. ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

THIS DEBT WILL BE ASSUMED TO BE VALID BY THE COLLECTOR UNLESS THE CONSUMER, WITHIN THIRTY DAYS AFTER RECEIPT OF THIS NOTICE, DISPUTES THE VALIDITY OF THE DEBT OR ANY PORTION THEREOF.

IF THE CONSUMER NOTIFIES COLLECTOR IN WRITING WITHIN THE THIRTY DAY PERIOD THAT THE DEBT, OR ANY PORTION THEREOF, IS DISPUTED, COLLECTOR WILL OBTAIN VERIFICATION OF THE DEBT OR A COPY OF A JUDGMENT AGAINST THE CONSUMER AND A COPY OF SUCH VERIFICATION OR JUDGMENT WILL BE MAILED TO THE CONSUMER BY COLLECTOR.

UPON THE CONSUMER'S WRITTEN REQUEST WITHIN THE THIRTY DAY PERIOD, COLLECTOR WILL PROVIDE THE CONSUMER WITH THE NAME AND ADDRESS OF THE ORIGINAL CREDITOR, IF DIFFERENT FROM THE CURRENT CREDITOR.

**NOTE:** THE ABOVE INFORMATION IS NOT INTENDED TO BE A COMPLETE LIST OF RIGHTS CONSUMERS MAY HAVE UNDER STATE AND FEDERAL LAW.

F0968
REV. 0603

# EXHIBIT B

Earn points on all of your
purchases, everywhere
you use the Card.
Visit www.americanexpress.com/rewards

## Blue from American Express℠

Prepared For
TIMOTHY BROWDER

Account Number
3715-116214-71009

Closing Date
01/25/04

Page 1 of 6

| Previous Balance $ | Payment Activity $ | New Activity $ Inc. Adjustments and Finance Charges if any | New Balance $ | Minimum Amount Due $ |
|---|---|---|---|---|
| 17,085.01 | -342.00 | +148.40 | =16,891.41 | 338.00 |

Payment Due Date
02/14/04
Please refer to page 2
for important information
regarding your account

| Credit Line Summary on 01/25/04 | Total Credit Line $ | Available Credit Line $ | Cash Advance Limit $ | Available Cash Limit $ |
|---|---|---|---|---|
| | 17,000.00 | 108.59 | 400.00 | 108.59 |

Contact us at www.americanexpress.com or call Customer Service at 1-888-BLUE-741.

### One Less Thing to Worry About this New Year

Sign up to view your Account online to make sure that all your presents, gift certificates, and plane tickets are recorded and accurate. It only takes a few seconds for you to check your statement and view your most recent Account activity--you can even pay your bill online. It's a great way to help you keep track of all your spending.

Sign up today at: www.americanexpress.com/mycardaccount

### Activity
*Indicates posting date*

| | | Amount $ |
|---|---|---|
| 01/07/04 | Payment Received - Thank You | 342.00 |

**New Activity for TIMOTHY BROWDER**
Card XXXX-XXXXX4-71009

| | | Amount $ |
|---|---|---|
| 01/25/04 | Periodic FINANCE CHARGE | 148.40 |

### Total of New Activity                    148.40

Continued on Page 3

Please fold on the perforation below, detach and return with your payment.

**Payment Coupon**

Account Number
3715-116214-71009

Payment Due Date:
02/14/04

Total New Balance
$ 16,891.41

Minimum Amount Due
$338.00

Please enter account number on all checks and correspondence.

To avoid additional Finance Charges on Purchases, pay New Balance before Payment Due Date.

Note any address and/or telephone number change on reverse side. Unless you check here, this change will apply to all of your Card Accounts except any Corporate Card Accounts you may have.

TIMOTHY BROWDER
163 GERRY RD
CHESTNUT HILL MA 02467-3185

$ _____
Amount enclosed

Mail Payment to:

AMERICAN EXPRESS
PO BOX 360002
FT LAUDERDALE FL 33336-0002

0000371511621471009  001689141000033800 21  A

Prepared For
TIMOTHY BROWDER

Account Number
XXXX-XXXXX4-71009

Page 2 of 6

**Payments:** Payments received after 12:00 noon or on weekends or holidays may not be credited until the next business day. Payments must be in US Dollars and drawn on a bank located in the US (other than American Express Centurion Bank), in the enclosed envelope with the remittance stub attached and account number listed on the check. Please do not send post-dated checks. They will be deposited upon receipt. If payment is made in any other form or at any other location, there may be a delay in processing. We reserve the right to process checks electronically, at first presentment and any re-presentments, by transmitting the amount of the check, routing number, account number and check serial number to your financial institution. Your checking account may be debited as soon as the same day we receive your payment. If we can not collect the funds electronically at first presentment, we may issue a draft against your account for the amount of the check. **Authorization for Electronic Payments:** By using the American Express Pay By Computer, Pay By Phone or any other American Express electronic payment service, you will be authorizing American Express to initiate an electronic debit to the financial account you specify in the amount you request. To use Pay By Computer, please visit us at www.americanexpress.com.

**Lost or Stolen Card:** If the Card is lost or stolen, in the U.S. immediately telephone us at the number noted to the right. Outside the U.S. contact the nearest American Express Travel Service Office or call any local American Express office.

**Finance Charges: Average Daily Balance Method for Calculation of Finance Charges (FC):** We use the Average Daily Balance method to calculate FC on your Account. Under this method, we figure the FC on your Account by applying the daily periodic rate to the Average Daily Balance (as described below) for each feature (such as Purchase, Cash Advance and Balance Transfer features) of your Account (including current transactions). To get the Average Daily Balance for each feature, we (1) take the beginning balance for the feature each day (including unpaid FC from previous billing periods), (2) add any new transactions, debits, or fees, (3) subtract any payments or credits, and (4) make any appropriate adjustments. *For each day after the first day of the billing period, we also add an amount of interest equal to the previous day's daily balance multiplied by the daily periodic rate for the feature.* This gives us the daily balance for the feature for that day and the beginning balance for the feature for the next day. If this balance is negative, it is considered to be zero. Then, we add up all the daily balances for the feature for the billing period and divide the total by the number of days in the billing period. This gives us the Average Daily Balance for the feature. For all features except Cash Advances and certain promotions, the Average Daily Balance will be considered to be zero if you paid the New Balance, if any, shown on your previous month's statement by the Payment Due Date shown on that statement. If you multiply the Average Daily Balance for each feature by the number of days in the billing period and the daily periodic rate for that feature, the result will be the FC assessed on that feature, except for variations caused by rounding. The total FC for the billing period is calculated by adding the FC assessed on all features of the Account. *This method of calculating the Average Daily Balance and FC results in daily compounding of FC.* The minimum FC for any billing period in which FC is imposed is $0.50.

**Billing Rights Summary: In Case of Errors or Questions About Your Bill:** If you think your bill is incorrect, or if you need more information about a transaction on your bill, write us on a separate sheet of paper at the address noted to the right. We must hear from you no later than 60 days after we sent you the FIRST bill on which the error or problem appeared. You can telephone us at the number indicated on the front of this statement, but doing so will not preserve your rights. In your letter, give us the following information: 1. Your name and account number; 2. The dollar amount of the suspected error; 3. Describe why you believe there is an error. If you need more information, describe the item you are unsure about. You do not have to pay any amount in question while we are investigating, but you are still obligated to pay the parts of your bill that are not in question. While we investigate your question, we cannot report you as delinquent or take any action to collect the amount you question. If you have authorized us to pay your bill automatically from your savings or checking account, you can stop the payment on any amount you think is wrong. To stop the payment, your letter must reach us three business days before the automatic payment is scheduled to occur. **Special Rule For Credit Card Purchases:** If you have a problem with the quality of goods or services that you purchased with a credit card, and you have tried in good faith to correct the problem with the merchant, you may not have to pay the remaining amount due on the goods or services. You have this protection only when the purchase price was more than $50 and the purchase was made in your home state or within 100 miles of your mailing address. (If we own or operate the merchant, or if we mailed you the advertisement for the property or services, all purchases are covered regardless of amount or location of the purchase.)

**In Case of Errors or Questions About Your Electronic Transfers:** Please contact us by clicking on the Customer Service Link online at www.americanexpress.com, or you can call us at 1-800-IPAY-AXP for Pay By Phone & Pay By Computer issues, or 1-800-CASH-NOW for Express Cash & automatic payment issues. You can also write to the Express Cash Operations address indicated on your statement. If you think your statement, receipt, or transaction is wrong, please contact us as soon as possible. We must hear from you no later than 60 days after we sent you the FIRST statement on which the problem or error appeared. When contacting us: 1. Tell us your name & account number; 2. Provide the dollar amount of the suspected error; 3. Describe the error or the transfer you are unsure of & explain as clearly as you can why you believe there is an error or why you need more information. We will investigate your complaint & correct any error promptly. If we take more than 10 business days to do this, we will credit your account for the amount you think is in error, so that you will have use of the money during the time it takes us to complete our investigation.

**Credit Balance:** If a credit balance (designated "CR") is shown on this statement, it represents money owed to you. You may make charges against the credit balance or request a refund. If you do not make sufficient charges against the credit balance or request a refund, we will, within 30 days after expiration of the six-month period following the date of the first statement indicating the credit balance, issue a check to you for the credit balance in your account if the amount is $1.00 or more. **Creditor:** American Express Centurion Bank. New York residents may contact the New York Banking Department to obtain a comparative listing of credit card rates, fees and grace periods by calling 1-800-518-8866.



To Pay By Phone
1-800-472-9297

Customer Service and
Lost or Stolen Card
1-888-BLUE-741
24 hours/7 days

Express Cash
1-800-CASH-NOW

International Collect
1-336-393-1111

Hearing Impaired
(9am-5pm EST)
TTY:  1-800-221-9950
FAX:  1-800-695-9090
In NY:  1-800-522-1897

Correspondence

Customer Service
P.O. Box 7863
Ft. Lauderdale, FL
33329-7863

Express Cash
Operations
P.O. Box 297815
Ft. Lauderdale, FL
33329-7815

Payments
PO BOX 360002
FT LAUDERDALE
FL
33336-0002



Change of Address
If correct on front
do not use

Name

Company
Name

Street Address

City, State

Zip Code

Area Code and
Home Phone

Area Code and
Work Phone

Email

Providing your email
address to American
Express will enable you
to receive special offers,
suited to your needs.

Prepared For
TIMOTHY BROWDER

Account Number
XXXX-XXXXX4-71009

Closing Date
01/25/04

Page 3 of 6

| Finance Charges<br>Billing days this period: 32 | Average Daily<br>Balance $ | Daily<br>Periodic Rate | Actual ANNUAL<br>PERCENTAGE<br>RATE | Nominal ANNUAL<br>PERCENTAGE<br>RATE | Periodic<br>FINANCE<br>CHARGE $ |
|---|---|---|---|---|---|
| Purchases | 15,023.21 | 0.0274% | 10.00% | 9.99% | 131.72 |
| Cash Advances | 0.00 | 0.0520% | 0.00% | 18.98% | 0.00 |
| Universal Check 9.9% LOB | 1,923.78 | 0.0271% | 9.88% | 9.90% | 16.68 |
| | | | | | 148.40 |

Certain of the periodic rates and APRs above may be variable. Those rates may vary
based upon the prime rate identified in the Wall Street Journal, as described in your
Cardmember Agreement as currently in effect.

# EXHIBIT C

Plain Dealer (Cleveland) September 26, 2004 Sunday

14 of 50 DOCUMENTS

Copyright 2004 Plain Dealer Publishing Co.
Plain Dealer (Cleveland)

September 26, 2004 Sunday
Final Edition; All Editions

SECTION: BUSINESS; Pg. G2

LENGTH: 498 words

HEADLINE: Oops! Maybe **Discover Card** ruling was in line after all

BYLINE: John Kroll, Plain Dealer Deputy Business Editor

BODY:

Cleveland Municipal Judge Robert Triozzi, I apologize.

The judge recently threw out Discover Bank's attempt to collect from Ruth Owens. She ran up $1,460.73 on her **Discover Card.** She stopped using her **card** in January 1996 but still made payments, sometimes missing deadline. In March 1997, she used her card one last time, for a $300 cash advance.

Then her troubles really began. Finance charges pushed her over a $1,900 credit limit, triggering overlimit fees ($20 to $29 a month) on top of finance charges and late fees and more fees for a product called CreditSafe.

(A spokeswoman for Discover declined to comment.)

Owens kept chipping away at her growing debt, paying a total of $3,492 by May 2003. Discover sued for the unpaid balance - which by then topped $5,500.

Judge Triozzi said no. I thought he was using a poor woman's plight - Owens was unemployed and on Social Security Disability - to win points with the public while ignoring a written contract. His ruling called Discover's actions "unconscionable." I called that hyperbole.

Actually, it's the law.

Contracts are "unconscionable" if they fail two tests, according to Gregory Travalio, Lawrence D. Stanley Professor of Law at **Ohio** State University's Moritz College of Law. There's the procedural test - was the bargaining process fair? And the substantive - were the terms reasonable?

Judge Triozzi skimmed over the procedural part. But law profs I talked with agreed that credit agreements have a few strikes against them, being so often a mire of small print and obscure language.

Can we all ignore contracts and skip payments? No; specific contracts make a difference. More important, we have to pass the substantive test.

Discover was trying to collect about $9,000 on a $1,900 debt. It kept the account open long after it was clear Owens was in trouble. And it even billed her $369.52 over two years for CreditSafe - a program to put all payments and fees on hold if you're unemployed, disabled or hospitalized. Owens was unemployed and disabled - but evidently those were ruled out as pre-existing conditions.

With all that, the procedural test wasn't stiff. Larry Garvin, another OSU law professor, said **Ohio courts** tend to rule that "a whole lot of one can make up for not much of the other."

So Triozzi had grounds to call the contract unconscionable and throw it out. He's not safe on appeal, but I was wrong to think he was off the wall. There are limits to what contracts can do.

Plain Dealer (Cleveland) September 26, 2004 Sunday

This isn't new. The application of "unconscionability" to consumer contracts stretches back at least to 1965 and a landmark case called Williams v. Walker-Thomas Furniture Co. Triozzi's ruling "absolutely comes out of the tradition of Williams v. Walker," said Kevin O'Neill, associate professor at the Cleveland-Marshall College of Law at Cleveland State University.

(Yes, I found this so hard to believe that I kept asking other profs.)

Judge, I'm sorry I doubted you.

John Kroll is a Plain Dealer

Deputy Business Editor. He may

be reached at jkroll@plaind.com or 216-999-4117.

**LOAD-DATE:** September 27, 2004

# EXHIBIT D



# 2001

**Department of the Treasury**
**Internal Revenue Service**

# Instructions for Forms 1099-A and 1099-C

*Section references are to the Internal Revenue Code.*

## An Item To Note

In addition to these specific instructions, you should also use the **2001 General Instructions for Forms 1099, 1098, 5498, and W-2G.** Those general instructions include information about:

- Backup withholding
- Magnetic media and electronic reporting requirements
- Penalties
- When and where to file
- Taxpayer identification numbers
- Statements to recipients
- Corrected and void returns
- Other general topics

You can get the general instructions from the IRS Web Site at **www.irs.gov** or by calling 1-800-TAX-FORM (1-800-829-3676).

## Specific Instructions for Form 1099-A

File **Form 1099-A,** Acquisition or Abandonment of Secured Property, for each borrower if you lend money in connection with your trade or business and, in full or partial satisfaction of the debt, you acquire an interest in property that is security for the debt, or you have reason to know that the property has been abandoned. You need not be in the business of lending money to be subject to this reporting requirement.

### Coordination With Form 1099-C

If, in the same calendar year, you cancel a debt in connection with a foreclosure or abandonment of secured property, it is not necessary to file both Form 1099-A and **Form 1099-C,** Cancellation of Debt, for the same debtor. You may file Form 1099-C only. You will meet your Form 1099-A filing requirement for the debtor by making entries in boxes 5 and 7 on Form 1099-C. You may file both Forms 1099-A and 1099-C; if you do, make no Form 1099-A related entries in boxes 5 and 7 on Form 1099-C. See the instructions for Form 1099-C on page AC-2.

### Property

Property means any real property (such as a personal residence), any intangible property, and tangible personal property except:

- No reporting is required for tangible personal property (such as a car) held only for personal use. However, you must file Form 1099-A if the property is totally or partly held for use in a trade or business or for investment.

- No reporting is required if the property securing the loan is located outside the United States and the borrower furnished the lender a statement, under penalties of perjury, that the borrower is an exempt foreign person (unless the lender knows that the statement is false).

### Who Must File

In addition to the general rule specified above, the following rules apply.

**Multiple owners.** If there are multiple owners of undivided interests in a single loan, such as in pools, fixed investment trusts, or other similar arrangements, the trustee, record owner,

or person acting in a similar capacity must file Form 1099-A on behalf of all the owners of beneficial interests or participations. In this case, only one form for each borrower must be filed on behalf of all owners with respect to the loan. Similarly, for bond issues, only the trustee or similar person is required to report.

**Governmental unit.** A governmental unit, or any of its subsidiary agencies, that lends money secured by property must file Form 1099-A.

**Subsequent holder.** A subsequent holder of a loan is treated as the lender for purposes of the reporting requirement for events occurring after the loan is transferred to the new holder.

**Multiple lenders.** If more than one person lends money secured by property and one lender forecloses or otherwise acquires an interest in the property and the sale or other acquisition terminates, reduces, or otherwise impairs the other lenders' security interests in the property, the other lenders must file Form 1099-A for each of their loans. For example, if a first trust holder forecloses on a building, and the second trust holder knows or has reason to know of such foreclosure, the second trust holder must file Form 1099-A for the second trust even though no part of the second trust was satisfied by the proceeds of the foreclosure sale.

### Abandonment

An abandonment occurs when the objective facts and circumstances indicate that the borrower intended to and has permanently discarded the property from use. You have "reason to know" of an abandonment based on all the facts and circumstances concerning the status of the property. You will be deemed to know all the information that would have been discovered through a reasonable inquiry when, in the ordinary course of business, you become aware or should become aware of circumstances indicating that the property has been abandoned. If you expect to commence a foreclosure, execution, or similar sale within 3 months of the date you had reason to know that the property was abandoned, reporting is required as of the date you acquire an interest in the property or a third party purchases the property at such sale. If you expect to but do not commence such action within 3 months, the reporting requirement arises at the end of the 3-month period.

### Statements to Borrowers

If you are required to file Form 1099-A, you must provide a statement to the borrower. Furnish a copy of Form 1099-A or an acceptable substitute statement to each borrower. For more information about the requirement to furnish a statement to the borrower, see part H in the **General Instructions for Forms 1099, 1098, 5498, and W-2G.**

### Box 1. Date of Lender's Acquisition or Knowledge of Abandonment

Enter the date of your acquisition of the secured property or the date you first knew or had reason to know that the property was abandoned. An interest in the property generally is acquired on the earlier of the date title is transferred to the lender or the date possession and the burdens and benefits of ownership are transferred to the lender. If an objection period is provided by law, use the date the objection period expires. If you purchase the property at a sale held to satisfy the debt, such as at a foreclosure or execution sale, use the later of the date of sale or the date the borrower's right of redemption expires.

For an abandonment, enter the date you knew or had reason to know that the property was abandoned unless you expect to commence a foreclosure, execution, or similar action within 3 months, as explained earlier. If a third party purchases the property at a foreclosure, execution, or similar sale, the property is treated as abandoned, and you have reason to know of its abandonment on the date of sale.

## Box 2. Balance of Principal Outstanding

Enter the balance of the debt outstanding at the time the interest in the property was acquired or on the date you first knew or had reason to know that the property was abandoned. Include only unpaid principal on the original debt. Do not include accrued interest or foreclosure costs.

## Box 3. Unused Box

Make no entry in this box.

## Box 4. Fair Market Value of Property

For a foreclosure, execution, or similar sale, enter the fair market value (FMV) of the property. (See Temporary Regulations section 1.6050J-1T, Q/A-32.) Generally, the gross foreclosure bid price is considered to be the FMV. If an abandonment or voluntary conveyance to the lender in lieu of foreclosure occurred and you checked "Yes" in box 5, enter the appraised value of the property. Otherwise, make no entry in this box.

## Box 5. Was Borrower Personally Liable for Repayment of the Debt?

Enter an "X" in the applicable box to indicate whether the borrower was personally liable for repayment of the debt at the time the debt was created or, if modified, at the time of the last modification.

## Box 6. Description of Property

Enter a general description of the property. For real property, generally you must enter the address of the property, or, if the address does not sufficiently identify the property, enter the section, lot, and block. For personal property, enter the applicable type, make, and model. For example, describe a car as "Car– 2000 Buick Regal." Use a category such as "Office Equipment" to describe more than one piece of personal property, such as six desks and seven computers. Enter "CCC" for crops forfeited on Commodity Credit Corporation loans.

## Specific Instructions for Form 1099-C

File **Form 1099-C**, Cancellation of Debt, for each debtor for whom you canceled a debt owed to you of $600 or more only if:

1. You are an entity described under **Who Must File** below and

2. An identifiable event has occurred. It does not matter whether the actual cancellation is on or before the date of the identifiable event. See **When Is a Debt Canceled?** on page AC-3.

Form 1099-C must be filed regardless of whether the debtor is required to report the debt as income.

The debtor may be an individual, corporation, partnership, trust, estate, association, or company.

Do not combine multiple cancellations of a debt to determine whether you meet the $600 reporting requirement unless the separate cancellations are under a plan to evade the Form 1099-C requirements.

## Coordination With Form 1099-A

If, in the same calendar year, you cancel a debt in connection with a foreclosure or abandonment of secured property, it is not necessary to file both **Form 1099-A**, Acquisition or Abandonment of Secured Property, and Form 1099-C for the same debtor. You may file Form 1099-C only. You will meet your Form 1099-A filing requirement for the debtor by making entries in boxes 5 and 7 on Form 1099-C. You may file both Forms 1099-A and 1099-C; if you do, make no Form 1099-A

related entries in boxes 5 and 7 on Form 1099-C. See the instructions for Form 1099-A on page AC-1 and **Box 5** and **Box 7** on page AC-4.

## Who Must File

File Form 1099-C if you are one of the following:

1. A financial institution described in section 581 or 591(a) (such as a domestic bank, trust company, building and loan or savings and loan association).

2. A credit union.

3. A Federal Government agency including:

a. A department,

b. An agency,

c. A court or court administrative office, or

d. An instrumentality in the executive, judicial, or legislative branch of the Government, including Government corporations.

4. One of the following (or any successor or subunit of the following):

a. Federal Deposit Insurance Corporation,

b. Resolution Trust Corporation,

c. National Credit Union Administration,

d. Any military department,

e. U.S. Postal Service, or

f. Postal Rate Commission.

5. Any organization a significant trade or business of which is the lending of money, such as a finance company or credit card company (whether or not affiliated with a financial institution).

Also file Form 1099-C if you are a corporation that is a subsidiary of a financial institution or credit union, but only if, because of your affiliation, you are subject to supervision and examination by a Federal or state regulatory agency.

**Multiple creditors.** If a debt is owned (or treated as owned for Federal income tax purposes) by more than one creditor, each creditor that is described under **Who Must File** above must issue a Form 1099-C if that creditor's part of the canceled debt is $600 or more. To meet this requirement, a bank, fund administrator, or other designee of the creditor may file a single Form 1099-C reporting the aggregate canceled debt or may file Form 1099-C for that creditor's part of the canceled debt. Use any reasonable method to determine the amount of each creditor's part of the canceled debt.

Debt owned by a partnership is treated as owned by the partners and must follow the rules for multiple creditors.

**Pass-throughs and REMICs.** Until further guidance is issued, no penalty will apply for failure to file Form 1099-C, or provide statements to debtors, for a canceled debt held in a pass-through securitized debt arrangement or held by a real estate mortgage investment conduit (REMIC). A pass-through securitized debt arrangement is any arrangement in which one or more debts are pooled and held for 20 or more persons whose interests in the debt are undivided coownership interests that are freely transferable. Coownership interests that are actively traded personal property (as defined in Regulations section 1.1092(d)-1) are presumed to meet these requirements.

## Debt Defined

A debt is any amount owed to you including stated principal, stated interest, fees, penalties, administrative costs, and fines. The amount of debt canceled may be all or only part of the total amount owed. However, for a lending transaction, you are required to report only the stated principal. See **Exceptions** on page AC-3.

## When To File

Generally, file Form 1099-C for the year in which an identifiable event occurs. See **Exceptions** on page AC-3. If you cancel a debt before an identifiable event occurs, you may choose to file Form 1099-C for the year of cancellation. No further reporting is required even if a second identifiable event occurs on the same debt. Also, you are not required to file an additional or corrected Form 1099-C if you receive payment on a prior year debt.

## When Is a Debt Canceled?

A debt is canceled on the date an identifiable event occurs. An identifiable event occurs when the debt is canceled:

1. Under Title 11 of the U.S. Code (bankruptcy) (reportable only for business or investment debt; see **Exceptions** below).

2. Or extinguished making it unenforceable in a receivership, foreclosure, or similar Federal or state court proceeding.

3. Or extinguished when the statute of limitations for collecting the debt expires, or when the statutory period for filing a claim or beginning a deficiency judgment proceeding expires. Expiration of the statute of limitations is an identifiable event only when a debtor's affirmative statute of limitations defense is upheld in a final judgment or decision of a court and the appeal period has expired.

4. When the creditor elects foreclosure remedies that by law end or bar the creditor's right to collect the debt. This event applies to a mortgage lender or holder who is barred by local law from pursuing debt collection after a "power of sale" in the mortgage or deed of trust is exercised.

5. Due to a probate or similar proceeding.

6. Under an agreement between the creditor and the debtor to cancel the debt at less than full consideration if the last event necessary to cancel the debt has occurred.

7. Because of a decision or a defined policy of the creditor to discontinue collection activity and cancel the debt. A creditor's defined policy can be in writing or an established business practice of the creditor. A creditor's practice to stop collection activity and abandon a debt when a particular nonpayment period expires is a defined policy.

8. Because the nonpayment testing period expires. This event occurs when the creditor has not received a payment on the debt during the testing period. The testing period is a 36-month period ending on December 31 plus any time when the creditor was precluded from collection activity by a stay in bankruptcy or similar bar under state or local law. The creditor can rebut the occurrence of this identifiable event if (a) the creditor (or a third-party collection agency) has engaged in significant bona fide collection activity during the 12-month period ending on December 31 or (b) facts and circumstances that exist on January 31 following the end of the 36-month period indicate that the debt was not canceled. Significant bona fide collection activity does not include nominal or ministerial collection action, such as an automated mailing. Facts and circumstances indicating that a debt was not canceled include the existence of a lien relating to the debt (up to the value of the security) or the sale or packaging for sale of the debt by the creditor.

## Exceptions

You are not required to report on Form 1099-C the following:

1. **Certain bankruptcies.** You are not required to report a debt canceled in bankruptcy unless you know from information included in your books and records that the debt was incurred for business or investment purposes. If you are required to report a business or investment debt canceled in bankruptcy, report it for the later of (a) the year in which the amount of canceled debt first can be determined or (b) the year in which the debt is canceled in bankruptcy. A debt is incurred for business if it is incurred in connection with the conduct of any trade or business other than the trade or business of performing services as an employee. A debt is incurred for investment if it is incurred to purchase property held for investment (as defined in section 163(d)(5)).

2. **Interest.** You are not required to report interest. However, if you choose to report interest as part of the canceled debt in box 2, you must show the interest separately in box 3.

3. **Nonprincipal amounts.** For a lending transaction, you are not required to report any amount other than stated principal. A lending transaction occurs when a lender loans money to, or makes advances on behalf of, a borrower (including revolving credit and lines of credit). Nonprincipal amounts include penalties, fines, fees, and administrative costs. However, for a

nonlending transaction, report any of these amounts that are included in the debt.

4. **Foreign debtors.** Until further guidance is issued, no penalty will apply if a financial institution does not file Form 1099-C for a debt canceled by its foreign branch or foreign office for a foreign debtor provided all the following apply:

a. The financial institution is engaged in the active conduct of a banking or similar business outside the United States.

b. The branch or office is a permanent place of business that is regularly maintained, occupied, and used to carry on a banking or similar financial business.

c. The business is conducted by at least one employee of the branch or office who is regularly in attendance at the place of business during normal working hours.

d. The indebtedness is extended outside the United States by the branch or office in connection with that trade or business.

e. The financial institution does not know or have reason to know that the debtor is a U.S. person.

5. **Related parties.** Generally, a creditor is not required to file Form 1099-C for the deemed cancellation of a debt that occurs when the creditor acquires the debt of a related debtor, becomes related to the debtor, or transfers the debt to another creditor related to the debtor. However, if the transfer to a related party by the creditor was for the purpose of avoiding the Form 1099-C requirements, Form 1099-C is required. See section 108(e)(4).

6. **Release of a debtor.** You are not required to file Form 1099-C if you release one of the debtors on a debt as long as the remaining debtors are liable for the full unpaid amount.

7. **Guarantor or surety.** You are not required to file Form 1099-C for a guarantor or surety. A guarantor is not a debtor for purposes of filing Form 1099-C even if demand for payment is made to the guarantor.

## Multiple Debtors

For debts of $10,000 or more incurred after 1994 that involve debtors who are jointly and severally liable for the debt, you must report the entire amount of the canceled debt on each debtor's Form 1099-C. Multiple debtors are jointly and severally liable for a debt if there is no clear and convincing evidence to the contrary. If it can be shown that joint and several liability does not exist, a Form 1099-C is required for each debtor for whom you canceled a debt of $600 or more.

For debts incurred before 1995 and for debts of less than $10,000 incurred after 1994, you must file Form 1099-C only for the primary (or first-named) debtor.

If you know or have reason to know that the multiple debtors were husband and wife who were living at the same address when the debt was incurred, and you have no information that these circumstances have changed, you may file only one Form 1099-C.

## Recordkeeping

If you are required to file Form 1099-C, you must retain a copy of that form or be able to reconstruct the data for at least 4 years from the due date of the return.

## Requesting TINs

You must make a reasonable effort to obtain the correct name and taxpayer identification number (TIN) of the person whose debt was canceled. You may obtain the TIN when the debt is incurred. If you do not obtain the TIN before the debt is canceled, you must request the debtor's TIN. Your request must clearly notify the debtor that the IRS requires the debtor to furnish its TIN and that failure to furnish such TIN subjects the debtor to a $50 penalty imposed by the IRS. You may use **Form W-9**, Request for Taxpayer Identification Number and Certification, to request the TIN. However, a debtor is not required to certify his or her TIN under penalties of perjury.

## Statements to Debtors

If you are required to file Form 1099-C, you must provide a statement to the debtor. Furnish a copy of Form 1099-C or an

acceptable substitute statement to each debtor. For more information about the requirement to furnish a statement to the debtor, see part H in the General Instructions for Forms 1099, 1098, 5498, and W-2G. You have furnished a statement to the debtor if it is mailed to the debtor's last known address.

### Box 1. Date Canceled

Enter the date the debt was canceled. See **When Is a Debt Canceled?** on page AC-3.

### Box 2. Amount of Debt Canceled

Enter the amount of the canceled debt. See **Debt Defined** on page AC-2 and **Exceptions** on page AC-3. Do not include any amount the lender receives in satisfaction of the debt by means of a settlement agreement, foreclosure sale, etc.

### Box 3. Interest if Included in Box 2

Enter any interest you included in the canceled debt in box 2. You are not required to report interest in box 2. But if you do, you also must report it in box 3.

### Box 4. Unused Box

Make no entry in this box.

### Box 5. Debt Description

Enter a description of the origin of the debt, such as student loan, mortgage, or credit card expenditure. Be as specific as possible. If you are filing a combined Form 1099-C and 1099-A, also enter a description of the property.

### Box 6. Check for Bankruptcy

Enter an "X" in the checkbox if you are reporting a debt canceled in bankruptcy.

### Box 7. Fair Market Value of Property

Make an entry in this box only if you are filing a combined Form 1099-C and 1099-A. For a foreclosure, execution, or similar sale, enter the fair market value (FMV) of the property. Generally, the gross foreclosure bid price is considered to be the FMV. If an abandonment or voluntary conveyance to the lender in lieu of foreclosure occurred, enter the appraised value of the property.