**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
EASTERN DIVISION**

TIMOTHY BROWDER,           )
           )
         Plaintiff,      )    1:05cv10462
           )    Magistrate Judge Bowler
      v.         )    Filed 3/10/05
           )
OSI COLLECTION SERVICES, INC.,    )
           )
         Defendant.    )

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF
FINAL APPROVAL OF THE CLASS ACTION SETTLEMENT**

Plaintiff Timothy Browder respectfully submits this memorandum in support of final approval of the class action settlement preliminarily approved by this Court on December 22, 2005.

On January 25, 2006, subsequent to the entry of the preliminary approval order, defendant caused notice of the settlement of this action to be mailed to 462 individuals identified as members of the settlement class pursuant to defendant's records. Of the 462, 90 letters were returned as undeliverable. Of the 90 undeliverable letters, 8 were re-sent with correct forwarding addresses. The U.S. Postal Service did not have records for the remaining 82 letters. There were 25 class members who timely sent in claim forms. No class members submitted requests for exclusion. No objections were filed or submitted by class members. Pursuant to the settlement agreement, and subject to the Court's approval, each class member who filed a claim form should receive $369.60.  Plaintiff will receive $1,020.

I.      **OVERVIEW OF THE LITIGATION PRECEDING SETTLEMENT**

1

Plaintiff brought this class action against OSI Collection Services, Inc. ("OSI") on March 10, 2005, alleging that OSI had sent him a collection letter in which the amount of the debt was represented as being comprised of $0 in interest. Plaintiff claimed that OSI's representation was false or misleading in violation of 15 U.S.C. §§ 1692e, e(2)(A), and e(10) because the debt in fact was partially comprised of interest. *See Debt Buyers' Assoc. v. Snow*, 2006 U.S. Dist. LEXIS 6527 (D.C. Dist. Ct. January 30, 2006). Plaintiff also claimed that OSI's violations of the FDCPA constituted a *per se* violation of Mass. G.L., ch. 93A, § 9. Defendant denies that it committed a violation of the FDCPA, Mass. G.L. ch. 93A, § 9 or is liable to Browder or any class members.

Shortly after Plaintiff initiated this action, the parties agreed to settle the action on a class basis. The parties now seek final approval of their settlement.

## II.    THE ADMINISTRATION OF THE SETTLEMENT

### A.    The Preliminary Approval Order.

On December 22, 2005, the Court entered an order granting preliminary approval of the Agreement reached between the parties. In its Order, the Court certified a class for the purposes of settlement pursuant to Federal Rule of Civil Procedure 23(a) and 23(b)(3). The settlement class consists of:

> (a) all natural persons who reside in Massachusetts, (b) who were sent a letter in the form represented by <u>Exhibit A</u> to the Amended Complaint by OSI Collection Services, Inc. (c) that had an interest field that was blank, (d) which letter was received between March 10, 2004 and March 20, 2005.

The Preliminary Approval Order further established a procedural framework for the final approval of the settlement. It required the parties to cause notice to be mailed to the

members of the above defined class, and set deadlines and procedures for requests for exclusion and objections to the settlement.

**B.    The Sending of Class Notice.**

Subsequent to the entry of the preliminary approval order, OSI caused notice of the settlement of this action to be mailed to 462 individuals identified as members of the settlement class pursuant to defendant's records. 90 letters were returned as undeliverable. Of the 90 letters returned, 8 were re-mailed with corrected addresses. The U.S. Postal Service did not have records for the remaining 82 letters.

**C.    The Value of the Settlement.**

The Court has previously considered the terms of the settlement in entering its Preliminary Approval Order:

(1)    OSI pays the named plaintiff Timothy Browder $1,020 in statutory damages;

(2)    OSI pays $9,240 to the Class to be distributed *pro rata* to each class member who sent in a claim form. 25 class members timely sent in claim forms. Each class member who sent in a claim form should receive $369.60.

(3)    OSI pays, subject to the Court's approval, Plaintiff's counsel $10,500 for attorney's fees and costs.

**D.    No Objections have been Received**

There were no requests for exclusion sent in by class members, and no objections to the settlement were filed or received. These results can be viewed as an endorsement of the settlement by the class.

3

**III.    THE COURT SHOULD GRANT FINAL APPROVAL TO THE SETTLEMENT**

The settlement satisfies all the requirements of Rule 23.

**A.    Rule 23(a)(1) - The Settlement Class Is So Numerous That Joinder Of All Members Is Impracticable**

From a search of its records, OSI concluded that there were approximately 462 people who met the class definitions. Where the class numbers are at least 40, joinder is generally considered impracticable. *Mowbray v. Waste Management Holdings, Inc.*, 189 F.R.D. 184 (D.Mass. 1999) (certified class of 81)*; Swanson v. American Consumer Industries*, 415 F.2d 1326, 1333 (7th Cir. 1969) (40 sufficient); *Sala v. National R. Pass. Corp.*, 120 F.R.D. 494, 497 (E.D.Pa. 1988) (40-50 sufficient); *see also Newberg on Class Actions*, 3rd ed. Sec. 3.05, pp. 3-25 ("The difficulty in joining as few as 40 class members should raise a presumption that joinder is impracticable, and the plaintiff whose class is that large or larger should meet the test of Rule 23(a)(1) on that fact alone."). The number of class members in this case plainly satisfies the numerosity requirement of Rule 23(a)(1).

**B.    Rule 23(a)(2) - The Claims Of The Settlement Class Arise From Common Questions Of Law And Fact**

The "commonality" requirement of Rule 23(a)(2) is usually satisfied where the class members' claims arise from a common nucleus of operative fact. Complete identity of facts is not required, because "to require complete identity would unduly confine class actions to the narrowest circumstances." *United States v. Rhode Island Dept. of Employment Sec.*, 619 F, Supp. 509, 513 (D.R.I. 1985); *Guckenberger v. Boston University*, 957 F. Supp. 306, 325 (D.Mass. 1997); *Kreuzfeld A.G. v. Carnehammer*, 138 F.R.D. 594, 599 (S.D.Fla. 1991) (the issue of commonality "turns on whether there exists at least one issue affecting all or a significant

4

number of proposed class members").

In the present case, the class members' claims arise from the common questions: Does OSI's collection letter violate the FDCPA? Does OSI's collection letter violate Mass. G.L. ch. 93A? These common questions satisfy Rule 23(a)(2).

**C.    Rule 23(a)(3) - Named Plaintiff's Claims are
        Typical Of the Claims Of The Settlement Class**

The "typicality" requirement of Rule 23(a)(3) is satisfied for many of the same reasons that the "commonality" requirement of Rule 23(a)(3) is met. "The question is simply whether a named plaintiff, in presenting his case, will necessarily present the claims of the absent plaintiffs." *Priest v. Zayre Corp.*, 118 F.R.D. 552, 555 (D.Mass. 1988). "The named plaintiff's claims are typical of the class when the plaintiff's injuries arise from the same event, practice or course of conduct of the defendant as do the injuries which form the basis of the class claim." *Adair v. Sorenson*, 134 F.R.D. 13, 17 (D.Mass. 1991). To be typical within the meaning of the rule simply requires that the claims of the named plaintiff arise from the same type of conduct which give rise to the class members' claims. *Burstein v. Applied Extrusion Technologies, Inc.*, 153 F.R.D. 488, 491 (D.Mass. 1994).

In the present case, Plaintiff's claims arise from the same questions of law as those of class members: Does OSI's collection letter violate the FDCPA? Does OSI's collection letter violate Mass. G.L. ch. 93A? Rule 23(a)(3) is plainly satisfied in this case.

**D.    Rule 23(a)(4) - Plaintiff And Her Counsel Will Fairly And
        Adequately Protect The Interests Of The Settlement Class**

The determination that the "representative parties will fairly and adequately protect the interests of the class" as required by Rule 23(a)(4) involves two considerations: (1)

whether the plaintiff's attorneys are properly qualified and experienced to conduct the litigation; and (2) whether the plaintiff has any interests antagonistic to the class. *Adair v. Sorenson*, 134 F.R.D. 13, 18 (D.Mass. 1991). *Accord, Andrews  v. Bechtel Power Corp.*, 780 F.2d 124, 130 (1st Cir. 1985); *Wetzel v. Liberty Mutual Ins. Co.*, 508 F.2d 239, 247 (3d Cir. 1975); *In re Alcoholic Beverages Litigation*, 95 F.R.D. 321 (E.D.N.Y. 1982).

As set forth in the declarations submitted herewith, Plaintiff's counsel are experienced in class action litigation. (Exhibit A)  In addition, Plaintiff has no interests in conflict with the class. Therefore, the named Plaintiff and his counsel satisfy the adequacy of representation requirement of Rule 23(a)(4).

### E.    The Settlement Class May Be Certified Pursuant to Rule 23(b)(3)

Class certification is appropriate under Rule 23(b)(3) where: (1) common questions of law or fact predominate over individual questions; and where (2) a class action represents a superior method for the fair and efficient adjudication of the controversy. Both of these requirements are satisfied in the present case.

### 1.    Common Questions Predominate Over Individual Issues

In order for common questions of law or fact to predominate over individual issues for purposes of Rule 23(b)(3), common issues must constitute a significant part of the individual cases. *Jenkins v. Raymark Industries, Inc.*, 782 F.2d 468, 472 (5th Cir. 1986). Courts "generally focus on the liability issues in deciding whether the predominance requirement is met, and if the liability issue is common to the Class, common questions are held to predominate. *In re Alexander Grant & Co. Litigation*, 110 F.R.D. 528, 534 (S.D.Fla. 1986); *see also Dura-Built Corp. v. Chase Manhattan Corp.*, 89 F.R.D. 87, 89 (S.D.N.Y. 1981). In the present case, a

common issue relates to the lawfulness of OSI's letter under the FDCPA and Mass. G.L., ch. 93A predominates over individual issues, if any, as required by Rule 23(b)(3).

### 2.    A Class Action is Superior to Other Methods of Resolving This Matter

For many of the reasons set forth above, a class action is the superior method to resolve the claims presented in this action.  In determining the superiority of a class action, the Court must consider the best available method of resolving the controversy in keeping with the goal of judicial economy. In reaching this determination, the Court should consider the inability of the uninformed to bring their claims and the improbability that large numbers of class members would possess the initiative to litigate individually. *Haynes v. Logan Furniture Mart, Inc.*, 503 F.2d 1161, 1165 (7th Cir. 1974). In *Phillips Petroleum Company v. Shutts*, 472 U.S. 797, 809, 105 S.Ct. 2965 (1985), the Supreme Court recognized that in cases where the class members' claims are too many or too small to litigate on an individual basis, the Court should certify the case as a class action under Rule 23(b)(3).

Given the large number of individual lawsuits that would be required if a class were not certified, a class action presents a superior method to fairly and efficiently adjudicate all of the claims of the class in this case, within the meaning of Rule 23(b)(3). To the extent that any class member wished to pursue any such individual claim, they were free to opt-out of the settlement under Rule 23(b)(3). In the present case, no class members have elected to exclude themselves from the settlement and no class members have objected to the settlement.

### IV.    STANDARD FOR GRANTING FINAL APPROVAL TO THE CLASS ACTION SETTLEMENT

In *Amchem Productions, Inc. v. Windsor*, 521 U.S. 591, 117 S.Ct. 2231 (1997), the United States Supreme Court explained that, before approving a class action settlement, the District Court must first be satisfied that the elements of Rule 23(a) and 23(b) have been met. *Id.* at 621, 117 S.Ct. at 2248.

Once the Court has determined that the requirements of Rule 23(a) and 23(b) have been met, the Court must then determine whether Rule 23(e) has been satisfied by determining whether the settlement is fair, reasonable, and adequate. A district court can approve a class action settlement if it is fair, adequate and reasonable. *Durrett v. Housing Authority of the City of Providence*, 896 F.2d 600, 604 (1st Cir.1990); *Duhaime v. John Hancock Mut. Life Ins. Co.*, 177 F.R.D. 54, 67 (D.Mass.1997). This requires the Court to consider both the substantive terms of the settlement compared to the likely result of the trial and "the negotiating process by which the settlement was reached." *Id.* citing *Weinberger v. Kendrick*, 698 F.2d 61, 69 (2d Cir.1982).

This fairness determination is not based on a single inflexible litmus test but, instead, reflects its studied review of a wide variety of factors bearing on the central question of whether the settlement is reasonable in light of the uncertainty of litigation. *See M. Berenson Co. v. Faneuil Hall Marketplace, Inc.*, 671 F.Supp. 819, 822-23 (D.Mass.1987); *Duhaime*, 177 F.R.D. at 68 (citing *Santana v. Collazo*, 714 F.2d 1172, 1175 (1st Cir.1983)). Among these factors are: (1) Plaintiff's likelihood of success on the merits; (2) the amount and nature of discovery or evidence; (3) the actual settlement terms and conditions; (4) the recommendation and experience of counsel; (5) the future expense and likely duration of litigation; (6) the recommendation of neutral parties, if any; (7) the number and nature of objections; and (8) the presence of good faith and the absence of collusion. *See Giusti-Bravo v. U.S. Veterans Admin.*,

853 F.Supp. 34, 36 (D.P.R.1993). *See also Durrett*, 896  F.2d at 604.

As previously mentioned, the parties settled this action shortly after it was initiated. Only informal discovery was conducted in this case by the parties. Thus, no party was certain of success on the merits.

The actual settlement provides for the distribution *pro rata* of $9.240 to each class member who timely sends in a claim form. This is the equivalent of $20 for each class member, which is $5 less than the the maximum damages recoverable, without a showing of wilfulness, under Mass. G.L. ch. 93A.  In fact, each of the 25 class members who timely sent in a claim form will receive $369.60. Class Counsel believes that the outcome is favorable to the class members due to the fact that no class members have opted out or objected to the settlement.

The essence of a settlement is a compromise.  Thus, even if "the relief afforded by the proposed settlement is substantially narrower than it would be if the suits were to be successfully litigated," this is no objection to a class settlement, since "the public interest may indeed be served by a voluntary settlement in which each side gives ground in the interest of avoiding litigation." *Air Line Stewards & Stewardesses Ass'n v. American Airlines, Inc.*, 455 F.2d 101, 109 (7th Cir. 1972). "[S]ettlements of class actions are highly favored in the law and will be upheld whenever possible because they are means of amicably resolving doubts and preventing lawsuits." *In re Domestic Air Transportation*, 148 F.R.D. at 312.

The opinion of experienced plaintiff's class action counsel with substantial experience in similar litigation as to the desirability of settlement is also an important consideration. *In re Domestic Air Transportation,* 148 F.R.D. at 312.  Indeed, there is a "strong initial presumption" that an arms-length settlement arrived at by counsel experienced in the type

of litigation at issue is fair. *Feder v. Harrington*, 58 F.R.D. 171 (S.D.N.Y. 1972).

A settlement compromising conflicting positions in class action litigation serves the public interest. *Armstrong v. Board of School Directors*, 616 F.2d 305, 313 (7th Cir. 1980). In evaluating a settlement, the trial court should not decide the merits, or proceed from the assumption that victory is 100% assured and that all claimed damages are properly recoverable. *In re Domestic Air Transportation*, 148 F.R.D. at 312-13; *Armstrong*, 616 F.2d at 314-15.

The value of a settlement is to be weighed against the possibility of some greater relief at a later time, taking into consideration the additional risks and costs that go hand in hand with protracted litigation. *Gottlieb v. Wiles*, 11 F.3d 1004, 1015 (10th Cir. 1993); *DeBoer v. Mellon Mortgage Co.*, 64 F.3d 1171, 1177 (8th Cir. 1995) ("virtually any benefit inuring to the class would be better than the prospect of an ultimately unsuccessful litigation").

## V.    THE COURT SHOULD APPROVE COUNSEL'S FEES AND COSTS

Plaintiff's counsel submits this memorandum in support of their request for an award of attorney's fees and costs. Pursuant to the settlement agreement, counsel is seeking attorney's fees and costs of $10,500. Plaintiff's counsel includes experienced class action attorneys, all of whom contributed their skills and expended their resources in a coordinated effort that resulted in the settlement of this matter. The amount requested by counsel is virtually the same as the actual time and costs incurred - $8,823.00 in fees and $578.53 in costs, for a total of $9,401.53. See <u>Appendix F</u> to the Declaration of Daniel A. Edelman, attached as <u>Exhibit A</u>.[1]

The First Circuit has specifically authorized the district courts to award attorney's fees using the lodestar method or the percentage of fund method. *Hensley v. Eckherhart,* 461

---

[1]In addition, attorney Christopher Lefebvre expects to incur about $2,000 in attorney time attending the fairness hearing.

U.S. 424, 433 (1983); *Consolo v. George,* 1996 U.S. App. LEXIS 10196, at *7 (1st Cir. 1996).

In computing the lodestar, the hourly billing rate applied is the hourly rate that is

normally charged in the community where counsel practices, i.e., the "market price." *See, e.g.*,

*Blum v. Stenson*, 465 U.S. 886, 895 (1984); *Grendel's Den, Inc. v. Larkin,* 749 F.2d 945, 950-51

(1st Cir. 1984); *McDonald v. Armontrout*, 860 F.2d 1456, 1459 (8th Cir. 1988) ("'in most cases,

billing rates reflect market rates – they provide an efficient and fair short-cut for determining the

market rate'"); *Spencer v. Comserv Corp.*, 1986 WL 15155, Fed.Sec.L.Rep. ¶93, 124, at 95, 532

(D. Minn. Dec. 30, 1986) ("[c]ompensating a nationally recognized securities class action

attorney at his hourly rate is entirely appropriate."); *Lindy Bros. Builders, Inc. v. Amer. Radiator

& Std. Sanitary Corp.*, 487 F.2d 161, 167 (3d Cir. 1973) ("The value of an attorney's time

generally is reflected in his normal billing rate."). The hourly rates of Edelman, Combs,

Latturner & Goodwin, LLC, and a detailed listing of Edelman, Combs, Latturner & Goodwin,

LLC's lodestar is set forth in Appendix F to the Declaration of Daniel A. Edelman, attached as

Exhibit A.

This case was prosecuted by Plaintiff's counsel on a contingent fee basis with no

assurance of any fee.  In undertaking to prosecute this case on that basis, Plaintiff's counsel

assumed a significant risk of nonpayment or underpayment.

Numerous cases recognize that the contingent fee risk is an important factor in

determining the fee award.  See *In re Continental Illinois Sec. Litig.*, 962 F.2d 566 (7th Cir. 1992)

(holding that when a common fund case has been prosecuted on a contingent basis, plaintiff's

counsel must be compensated adequately for the risk of non-payment); *Ressler*, 149 F.R.D. at

651, 654 (M.D. Fla. 1992) ("Numerous cases recognize that the attorney's contingent fee risk is

an important factor in determining the fee award.").

Plaintiff's counsel filed a well researched complaint alleging claims for relief under federal law.  Plaintiff's counsel subsequently amended the complaint to add claims for relief under Massachusetts law. Plaintiff's counsel engaged in negotiations which resulted in the settlement, prepared the settlement documents and handled calls from class members inquiring about the settlement. In light of the work performed in this matter, and the actual time and expenses incurred by Counsel of $8823.00 in fees and $578.53 in costs, respectively, Counsel's request for $10,500 is reasonable, and Counsel accordingly requests approval of this amount by the Court.

## VI.    THE SETTLEMENT SHOULD BE FINALLY APPROVED

Counsel for Plaintiff and the class believe that the settlement of the claim against OSI on the terms and conditions set forth in the Settlement Agreement is fair, reasonable, and adequate, and would be in the best interests of the members of the proposed class.  The settlement was negotiated in good faith at arm's length by counsel experienced in handling class action cases.  The settlement avoids the risk of protracted litigation and the possibility that the Plaintiff might not prevail at trial.

It is noted that the settlement was preliminarily approved by this Court on December 22, 2005, and notice to the class was mailed on January 25, 2006. No requests for exclusion or objections to the settlement have been received by the parties.  These factors strongly favor approval of the settlement. *Bussie v. Allmerica Fin. Corp.*, 50 F.Supp.2d 59, 72 (D.Mass.1999) (noting that favorable reaction of class to settlement, albeit not dispositive, constitutes strong evidence of fairness of proposed settlement) (*citing In re Painewebber Limited*

*Partnerships Litigation*, 171 F.R.D. 104, 106 (S.D.N.Y.), *aff'd*, 117 F.3d 721 (2d Cir.1997));

*Duhaime v. John Hancock Mut. Life Ins. Co.*, 177 F.R.D. 54, 70 (D.Mass.1997).


**VII.    CONCLUSION**

For all the reasons set forth above, Plaintiff individually, and as a representative

of a class of similarly situated persons, by counsel, urges the Court to grant final approval to the

settlement and to enter the parties' proposed order.[2]

Respectfully submitted,


s/ Francis R. Greene


Daniel A. Edelman
Francis R. Greene
EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
120 S. LaSalle Street, Suite 1800
Chicago, IL 60603
(312) 739-4200
(312) 419-0379 (FAX)

Christopher Lefebvre
BBO # 629056
Claude Lefebvre, P.C.
P.O. Box 479
Pawtucket, RI 02862
(401) 728-6060
(401) 728-6534 (FAX)

---

[2]  A draft Final Order is attached hereto as Exhibit B.

## <u>CERTIFICATE OF SERVICE</u>

I, Francis R. Greene, hereby certify that on March 21, 2006, a copy of the foregoing **PLAINTIFF'S MEMORANDUM IN SUPPORT OF FINAL APPROVAL OF THE CLASS ACTION SETTLEMENT** was filed electronically and notice was electronically sent to the following parties:

William T. Bogaert
bogaertw@wemed.com

Mark R. Freitas
freitasm@wemed.com

s/Daniel A. Edelman
Daniel A. Edelman
EDELMAN, COMBS, LATTURNER
          & GOODWIN, LLC
120 S. LaSalle Street, 18th Floor
Chicago, IL 60603
(312) 739-4200
(312) 917-0379 (FAX)
fgreene@edcombs.com

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

| | | |
|---|---|---|
| TIMOTHY BROWDER, | ) | |
| | ) | |
| Plaintiff, | ) | 1:05cv10462 |
| | ) | Magistrate Judge Bowler |
| v. | ) | Filed 3/10/05 |
| | ) | |
| OSI COLLECTION SERVICES, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## DECLARATION OF DANIEL A. EDELMAN

Daniel A. Edelman declares under penalty of perjury, as provided for by the laws of the United States (28 U.S.C. §1746), that the following statements are true:

1.      Edelman, Combs, Latturner & Goodwin, LLC, has 5 principals, Daniel A. Edelman, Cathleen M. Combs, James O. Latturner, Tara L. Goodwin, and Michelle R. Teggelaar and 9 associates.

2.      **Daniel A. Edelman** is a 1976 graduate of the University of Chicago Law School. From 1976 to 1981 he was an associate at the Chicago office of Kirkland & Ellis with heavy involvement in the defense of consumer class action litigation (such as the General Motors Engine Interchange cases). In 1981 he became an associate at Reuben & Proctor, a medium-sized firm formed by some former Kirkland & Ellis lawyers, and was made a partner there in 1982. From the end of 1985 he has been in private practice in downtown Chicago. Virtually all of his practice involves litigation on behalf of consumers, mostly through class actions. He is the co-author of Rosmarin & Edelman, Consumer Class Action Manual (2d-4th editions, National Consumer Law Center 1990, 1995 and 1999); author of Payday Loans: Big Interest Rates and Little Regulation, 11 Loy.Consumer L.Rptr. 174 (1999); author of Consumer Fraud and Insurance Claims, in Bad Faith and Extracontractual Damage Claims in Insurance Litigation, Chicago Bar Ass'n 1992; co-author of Chapter 8, "Fair Debt Collection Practices Act," Ohio Consumer Law (1995 ed.); co-author of Fair Debt Collection: The Need for Private Enforcement, 7 Loy.Consumer L.Rptr. 89 (1995); author of An Overview of The Fair Debt Collection Practices Act, in Financial Services Litigation, Practicing Law Institute (1999); co-author of Residential Mortgage Litigation, in Financial Services Litigation, Practicing Law Institute (1996); author of Automobile Leasing: Problems and Solutions, 7 Loy.Consumer L.Rptr. 14 (1994); author of Current Trends in Residential Mortgage Litigation, 12 Rev. of Banking & Financial Services 71 (April 24, 1996); author of Applicability of Illinois Consumer Fraud Act in Favor of Out-of-State Consumers, 8 Loy.Consumer L.Rptr. 27 (1996); co-author of

1

Illinois Consumer Law (Chicago Bar Ass'n 1996); co-author of D. Edelman and M. A. Weinberg, Attorney Liability Under the Fair Debt Collection Practices Act (Chicago Bar Ass'n 1996); author of The Fair Debt Collection Practices Act:  Recent Developments, 8 Loy.Consumer L. Rptr. 303 (1996); author of Second Mortgage Frauds, Nat'l Consumer Rights Litigation Conference 67 (Oct. 19-20, 1992); and author of Compulsory Arbitration of Consumer Disputes, Nat'l Consumer Rights Litigation Conference 54, 67 (1994).   He is a member of the Illinois bar and admitted to practice in the following courts: United States Supreme Court, Seventh Circuit Court of Appeals, First Circuit Court of Appeals, Second Circuit Court of Appeals, Third Circuit Court of Appeals, Fifth Circuit Court of Appeals, Eighth Circuit Court of Appeals, Ninth Circuit Court of Appeals, Tenth Circuit Court of Appeals, Eleventh Circuit Court of Appeals, United States District Courts for the Northern and Southern Districts of Indiana, United States District Courts for the Northern, Central, and Southern Districts of Illinois, United States District Court for the District of Arizona, United States District Court for the District of Connecticut, and the Supreme Court of Illinois.  He is a member of the Northern District of Illinois trial bar.

   **3.** **Cathleen M. Combs** is a 1976 graduate of Loyola University Law School.  She formerly supervised the Northwest office of the Legal Assistance Foundation of Chicago, where she was lead or co-counsel in class actions in the areas of unemployment compensation, prison law, social security law, and consumer law.  She joined what is now Edelman, Combs & Latturner in early 1991.  Decisions in which she was involved prior to joining the firm include: Johnson v. Heckler, 607 F.Supp. 875 (N.D.Ill. 1984), and 100 F.R.D. 70 (N.D. Ill. 1983); Sanders v. Shephard, 185 Ill.App.3d 719, 541 N.E.2d 1150 (1st Dist. 1989); Maller v. Cohen, 176 Ill.App.3d 987, 531 N.E.2d 1029 (1st Dist. 1988); Wright v. Department of Labor, 166 Ill.App.3d 438, 519 N.E.2d 1054 (1st Dist. 1988); Barron v. Ward, 165 Ill.App.3d 653, 517 N.E.2d 591 (1st Dist. 1987); City of Chicago v. Leviton, 137 Ill.App.3d 126, 484 N.E.2d 438 (1st Dist. 1985); Jude v. Morrissey, 117 Ill.App.3d 782, 454 N.E.2d 24 (1st Dist. 1983).  She is a member of the Northern District of Illinois trial bar.

   **4.** **James O. Latturner** is a 1962 graduate of the University of Chicago Law School.  Until 1969, he was an associate and then a partner at the Chicago law firm of Berchem, Schwanes & Thuma.  From 1969 to 1995 he was Deputy Director of the Legal Assistance Foundation of Chicago, where he specialized in consumer law, including acting as lead counsel in over 30 class actions.  His publications include Chapter 8 ("Defendants") in Federal Practice Manual for Legal Services Attorneys (M. Masinter, Ed., National Legal Aid and Defender Association 1989); Governmental Tort Immunity in Illinois, 55 Ill.B.J. 29 (1966); Illinois Should Explicitly Adopt the Per Se Rule for Consumer Fraud Act Violations, 2 Loy.Consumer L.Rep. 64 (1990), and Illinois Consumer Law (Chicago Bar Ass'n 1996).  He has taught in a nationwide series of 18 Federal Practice courses sponsored by the Legal Services Corporation, each lasting four days and designed for attorneys with federal litigation experience.  He has argued some 30 appeals, including two cases in the United States Supreme Court and two in the Illinois Supreme Court.  Mr. Latturner was involved in many of the significant decisions establishing the rights of Illinois consumers.  He is a member of the Northern District of Illinois trial bar.

5.    **Tara L. Goodwin** is a graduate of the University of Chicago (B.A., with general honors, 1988)and Illinois Institute of Technology, Chicago-Kent College of Law (J.D., with high honors,1991). She has been with the firm since her graduation and has participated in many of the cases described below. **Reported Cases.** Williams v. Chartwell Financial Services, LTD, 204 F.3d 748 (7th Cir. 2000); Hillenbrand v. Meyer Medical Group, 682 N.E.2d 101 (Ill.1st Dist. 1997), 720 N.E.2d 287 (Ill.1st Dist. 1999); Bessette v. Avco Fin. Servs., 230 F.3d 439 (1ˢᵗ Cir. 2000); Large v. Conseco Fin. Servicing Co., 292 F.3d 49 (1ˢᵗ Cir. 2002);; Carbajal v. Capital One, 219 F.R.D. 437 (N.D.Ill. 2004); Russo v. B&B Catering, 209 F.Supp.2d 857 (N.D.IL 2002); Garcia v. Village of Bensenville, 2002 U.S.Dist. LEXIS 3803 (N.D.Ill.); Romaker v. Crossland Mtg. Co., 1996 U.S.Dist. LEXIS 6490 (N.D.IL); Mount v. LaSalle Bank Lake View, 926 F.Supp. 759 (N.D.Ill 1996). She is a member of the Northern District of Illinois trial bar.

6.    **Michelle R. Teggelaar** is a graduate of the University of Illinois (B.A., 1993) and Chicago-Kent College of Law, Illinois Institute of Technology (J.D., with honors, 1997). **Reported Cases:** Johnson v. Revenue Management, Inc , 169 F.3d 1057 (7ᵗʰ Cir.1999); Coelho v. Park Ridge Oldsmobile, Inc., 247 F. Supp. 2d 1004 (N.D. Ill. 2003); Dominguez v. Alliance Mtge., Co., 226 F. Supp. 2d 907 (N.D. Ill. 2002); Watson v. CBSK Financial Group, Inc., 197 F. Supp. 2d 1118 (N.D. Ill. 2002); Van Jackson v. Check 'N Go of Illinois, Inc. 123 F. Supp. 2d 1085 (N.D. Ill. 2000), Van Jackson v. Check 'N Go of Illinois, Inc , 123 F. Supp. 2d 1079, Van Jackson v. Check 'N Go of Illinois, Inc., 114 F. Supp. 2d 731 (N.D. Ill. 2000); Van Jackson v. Check 'N Go of Illinois, Inc., 193 F.R.D. 544 (N.D. Ill. 2000); Vines v. Sands, 188 F.R.D. 302 (N.D. Ill. 1999); Veillard v. Mednick, 24 F. Supp. 2d 863 (N.D. Ill.1998); Sledge v. Sands, 182 F.R.D. 255 (N.D. Ill. 1998), Vines v. Sands, 188 F.R.D. 203 (N.D. Ill. 1999), Livingston v. Fast Cash USA, Inc , 753 N.E.2d 572  (Ind. 2001); Carroll v. Butterfield Heath Care, Inc., 2003 WL 22462604 (N.D. Ill. 2003); Payton v. New Century Mtge., Inc., 2003 WL 22349118 (N.D. Ill. 2003); Seidat v. Allied Interstate, Inc., 2003 WL 2146825 (N.D. Ill. 2003) (Report and Recommendation); Michalowski v. Flagstar Bank, FSB, 2002 WL 112905 (N.D. Ill. 2002); Bigalke v. Creditrust Corp., 2001 WL 1098047 (N.D. Ill 2001) (Report and Recommendation); Donnelly v. Illini Cash Advance, 2000 WL 1161076 (N.D. Ill. 2000); Mitchem v. Paycheck Advance Express, 2000 WL 419992 (N.D. Ill 2000); Pinkett v. Moolah Loan Co., 1999 WL 1080596 (N.D. Ill. 1999); Farley v. Diversified Collection Serv., 1999 WL 965496 (N.D. Ill. 1999); Davis v. Commercial Check Control, 1999 WL 965496 (N.D. Ill. 1999); Sledge v. Sands, 1999 WL 261745 (N.D. Ill. 1999); Slater v. Credit Sciences, Inc., 1998 WL 341631 (N.D. Ill. 1998); Slater v. Credit Sciences, Inc , 1998 WL 299803 (N.D. Ill. 1998).

7.    **Associates**

a.    **Francis R. Greene** is a graduate of Johns Hopkins University (B.A., with honors, May 1984), Rutgers University (Ph.D., October 1991), and Northwestern University Law School (J.D., 2000). **Reported Cases:** Johnson v. Thomas, 342 Ill. App.3d 382, 794 N.E.2d 919 (1ˢᵗ Dist. 2003); Jolly v. Shapiro & Kreisman, 237 F. Supp. 2d 888 (N.D. Ill. 2002); Parker v. 1-800 Bar None, a Financial Corp., Inc. 2002 WL 215530 (N.D. Ill. 2002); Jiang

v. Allstate Ins. Co. (199 F.R.D. 267); Hill v. AMOCO Oil Co. 2003 WL 262424, 2001 WL
293628 (N.D. Ill. 2003); Roquet v. Arthur Anderson LLP 2002 WL 1900768 (N.D. Ill. 2002);
White v. Financial Credit, Corp. 2001 WL 1665386 (N.D. Ill.); Ransom v. Gurnee Volkswagen
2001 WL 1241297 (N.D. Ill. 2001) and 2002 WL 449703 (N.D. Ill 2002); Doxie v. Impac
Funding Corp. 2002 WL 31045387 (N.D. Ill. 2002); Levin v. Kluever & Platt LLC 2003 WL
22757763 and 2003 WL 22757764 (N.D. Ill. 2003); Pleasant v. Risk Management Alternatives
2003 WL 22175390 (N.D. Ill. 2003); Jenkins v. Mercantile Mortgage 231 F. Supp. 2d 737 (N.D.
Ill. 2002); Hobson v. Lincoln Ins. Agency, Inc. 2001 WL 55528, 2001 WL 648958 (N.D. Ill.
2001), Anderson v. Lincoln Ins. Agency 2003 WL 291928, Hobson v. Lincoln Ins. Agency 2003
WL 338161 (N.D. Ill. 2003). He is a member of the Northern District of Illinois trial bar.

   **b.** **Julie Clark** is a graduate of Northern Illinois University (B.A.,
1997) and DePaul University College of Law (J.D., 2000). **Reported Cases:** Qualkenbush v.
Harris Trust & Savings Bank 219 F.Supp.2d 935 (N.D.Ill.,2002); Covington-McIntosh v. Mount
Glenwood Memory Gardens 2002 WL 31369747 (N.D.Ill.,2002), 2003 WL 22359626 (N.D. Ill.
2003).

   **c.** **Heather A. Piccirilli** is a graduate of DePaul University (B.S. *cum
laude,* 1997), and Roger Williams University School of Law (J.D., 2002).

   **d.** **Albert F. Hofeld Jr.** is a graduate of Reed College (B.A., 1990),
the University of Chicago Divinity School (M. Div., 1994), and Northwestern University Law
School (J.D., 2000).

   **e.** **Thomas E. Soule** is a graduate of Stanford University (B.A.,
2000), and the University of Wisconsin Law School (J.D., 2003)

   **f.** **Alexander H. Burke** is a graduate of Colgate University (B.A.,
1997), and Loyola University of Chicago School of Law (J.D., 2003).

   **g.** **Jeremy P. Monteiro** is a graduate of St. John's University (B.A.,
1999) and DePaul University College of Law (J.D., 2003).

   **h.** **Derek B. Rieman** is a graduate of Indiana University (B.A., 2000)
and University of Oregon Law School (J.D., 2004).

   **i.** **Curtis C. Warner** is a graduate of Grand Valley State University
(B.S. 1993), Wayne State University (M. Ed. 1998), and Michigan State University College of
Law (J.D., *cum laude,* 2002). He is a member of the Northern District of Illinois trial bar.

  **8.** The firm also has 15 legal assistants, as well as other support staff.

  **9.** Since its inception, the firm has recovered more than $500 million for

consumers.

   **10.** The types of cases handled by the firm are illustrated by the following:

   **11.** **Mortgage charges and servicing practices:** The firm has been involved in dozens of cases, mostly class actions, complaining of illegal charges on mortgages and improper servicing practices. Decisions in these cases include: Christakos v. Intercounty Title Co., 196 F.R.D. 496 (N.D.Ill. 2000); Johnstone v. Bank of America, N.A., 173 F.Supp.2d 809 (N.D.Ill. 2001); Leon v. Washington Mut. Bank, F.A., 164 F.Supp.2d 1034 (N.D.Ill. 2001); Williamson v. Advanta Mortg. Corp., 1999 U.S. Dist. LEXIS 16374 (N.D.Ill., Oct. 5, 1999); McDonald v. Washington Mut. Bank, F.A., 2000 U.S. Dist. LEXIS 11496 (N.D.Ill., June 22, 2000); Metmor Financial, Inc. v. Eighth Judicial District Court, No. 23848 (Nev.Sup.Ct., Apr. 27, 1993); GMAC Mtge. Corp. v. Stapleton, 236 Ill.App.3d 486, 603 N.E.2d 767 (1st Dist. 1992), leave to appeal denied, 248 Ill.2d 641, 610 N.E.2d 1262 (1993); Leff v. Olympic Fed. S. & L. Ass'n, 1986 WL 10636 (N.D.Ill. 1986); Aitken v. Fleet Mtge. Corp., 1991 U.S.Dist. LEXIS 10420 (N.D.Ill. 1991), and 1992 U.S.Dist. LEXIS 1687 (N.D.Ill., Feb. 12, 1992); Poindexter v. National Mtge. Corp., 1991 U.S.Dist. LEXIS 19643 (N.D.Ill., Dec. 23, 1991), later opinion, 1995 U.S.Dist. LEXIS 5396 (N.D.Ill., April 24, 1995); Sanders v. Lincoln Service Corp., 1993 U.S.Dist. LEXIS 4454 (N.D.Ill. 1993); Robinson v. Empire of America Realty Credit Corp., 1991 U.S.Dist. LEXIS 2084 (N.D.Ill., Feb. 20, 1991); In re Mortgage Escrow Deposit Litigation, M.D.L. 899, 1994 U.S.Dist. LEXIS 12746 (N.D.Ill., Sept. 8, 1994); Greenberg v. Republic Federal S. & L. Ass'n, 1995 U.S.Dist. LEXIS 5866 (N.D.Ill., May 1, 1995).

   **12.** The recoveries in the escrow overcharge cases alone are over $250 million. Leff was the seminal case on mortgage escrow overcharges.

   **13.** The escrow litigation had a substantial effect on industry practices, resulting in limitations on the amounts which mortgage companies held in escrow.

   **14.** **Automobile sales and financing practices:** The firm has brought many cases challenging practices relating to automobile sales and financing, including:

     **a.** Hidden finance charges resulting from pass-on of discounts on auto purchases. Walker v. Wallace Auto Sales, Inc., 155 F.3d 927, 1998 U.S. App. LEXIS 22663 (7th Cir. 1998).

     **b.** Misrepresentation of amounts disbursed for extended warranties. Taylor v. Quality Hyundai, Inc., 150 F.3d 689, 1998 U.S.App. LEXIS 16434 (7th Cir. 1998); Grimaldi v. Webb, 282 Ill.App.3d 174, 668 N.E.2d 39 (1st Dist. 1996), leave to appeal denied, 169 Ill.2d 566 (1996); Slawson v. Currie Motors Lincoln Mercury, Inc., 1995 U.S.Dist. LEXIS 451 (N.D.Ill., Jan. 5, 1995); Cirone-Shadow v. Union Nissan, Inc., 1995 U.S.Dist. LEXIS 1379 (N.D.Ill., Feb. 3, 1995), later opinion, 1995 U.S.Dist. LEXIS 5232 (N.D.Ill., April 20, 1995) (same); Chandler v. Southwest Jeep-Eagle, Inc., 1995 U.S. Dist. LEXIS 8212 (N.D.Ill., June 8,

1995); Shields v. Lefta, Inc., 1995 U.S.Dist. LEXIS 7807 (N.D.Ill., June 5, 1995).

       **c.**    Spot delivery. Janikowski v. Lynch Ford, Inc., 1999 U.S. Dist. LEXIS 3524 (N.D.Ill., March 11, 1999); Diaz v. Westgate Lincoln Mercury, Inc., 1994 U.S.Dist. LEXIS 16300 (N.D.Ill. 1994); Grimaldi v. Webb, 282 Ill.App.3d 174, 668 N.E.2d 39 (1st Dist. 1996), leave to appeal denied, 169 Ill.2d 566 (1996).

       **d.**    Force placed insurance. Bermudez v. First of America Bank Champion, N.A., 860 F.Supp. 580 (N.D.Ill. 1994); Travis v. Boulevard Bank, 1994 U.S.Dist. LEXIS 14615 (N.D.Ill., Oct. 13, 1994), modified, 880 F.Supp. 1226 (N.D.Ill., 1995); Moore v. Fidelity Financial Services, Inc., 884 F. Supp. 288 (N.D.Ill. 1995).

       **e.**    Improper obligation of cosigners. Lee v. Nationwide Cassell, 174 Ill.2d 540, 675 N.E.2d 599 (1996); Taylor v. Trans Acceptance Corp., 267 Ill.App.3d 562, 641 N.E.2d 907 (1st Dist. 1994), leave to appeal denied, 159 Ill.2d 581, 647 N.E.2d 1017 (1995).

       **f.**    Evasion of FTC holder rule. Brown v. LaSalle Northwest Nat'l Bank, 148 F.R.D. 584 (N.D.Ill. 1993), 820 F.Supp. 1078 (N.D.Ill. 1993), and 1993 U.S.Dist. LEXIS 11419 (N.D.Ill., Aug. 13, 1993).

       **15.**    These cases also had a substantial effect on industry practices. The warranty cases, such as Grimaldi, Gibson, Slawson, Cirone-Shadow, Chandler, and Shields, resulted in the Federal Reserve Board's revision of applicable disclosure requirements, so as to prevent car dealers from representing that the charge for an extended warranty was being disbursed to a third party when that was not in fact the case.

       **16.**    **Predatory lending practices**: The firm has brought numerous cases challenging predatory mortgage and "payday" lending practices, mostly as class actions. Livingston v. Fast Cash USA, Inc., 753 N.E.2d 572 (Ind. Sup. Ct. 2001); Williams v. Chartwell Fin. Servs., 204 F.3d 748 (7th Cir. 2000); Parker v. 1-800 Bar None, a Financial Corp., Inc., 01 C 4488, 2002 WL 215530 (N.D.Ill., Feb 12, 2002); Gilkey v. Central Clearing Co., 202 F.R.D. 515 (E.D.Mich. 2001); Van Jackson v. Check 'N Go of Ill., Inc., 114 F.Supp.2d 731 (N.D.Ill. 2000), later opinion, 193 F.R.D. 544 (N.D.Ill. 2000), 123 F.Supp. 2d 1079 (N.D.Ill. 2000), later opinion, 123 F.Supp. 2d 1085 (N.D.Ill. 2000); Henry v. Cash Today, Inc., 199 F.R.D. 566 (S.D.Tex. 2000); Donnelly v. Illini Cash Advance, Inc., 00 C 94, 2000 WL 1161076, 2000 U.S. Dist. LEXIS 11906 (N.D.Ill., Aug. 14, 2000); Jones v. Kunin, 2000 U.S. Dist. LEXIS 6380 (S.D.Ill., May 1, 2000); Davis v. Cash for Payday, 193 F.R.D. 518 (N.D.Ill. 2000); Reese v. Hammer Fin. Corp., 99 C 716, 1999 U.S. Dist. LEXIS 18812, 1999 WL 1101677 (N.D.Ill., Nov. 29, 1999); Pinkett v. Moolah Loan Co., 1999 U.S. Dist. LEXIS 17276 (N.D.Ill., Nov. 1, 1999); Gutierrez v. Devon Fin. Servs., 1999 U.S. Dist. LEXIS 18696 (N.D.Ill., Oct. 6, 1999); Vance v. National Benefit Ass'n, 99 C 2627, 1999 WL 731764, 1999 U.S. Dist. LEXIS 13846 (N.D.Ill., Aug. 26, 1999).

17.     **Other consumer credit issues:**  The firm has also brought a number of other Truth in Lending and consumer credit cases, mostly as class actions, involving such issues as:

a.     Phony nonfiling insurance.  <u>Edwards v. Your Credit Inc.</u>, 148 F.3d 427, 1998 U.S. App. LEXIS 16818 (5th Cir. 1998); <u>Adams v. Plaza Finance Co.</u>, 1999 U.S. App. LEXIS 1052 (7th Cir., January 27, 1999); <u>Johnson v. Aronson Furniture Co.</u>, 1997 U.S. Dist. LEXIS 3979 (N.D. Ill., March 31, 1997).

b.     The McCarran Ferguson Act exemption.  <u>Autry v. Northwest Premium Services, Inc.</u>, 144 F.3d 1037, 1998 U.S. App. LEXIS 9564  (7th Cir. 1998).

c.     Loan flipping.  <u>Emery v. American General</u>, 71 F.3d 1343 (7th Cir. 1995).  <u>Emery</u> limited the pernicious practice of "loan flipping," in which consumers are solicited for new loans and are then refinanced, with "short" credits for unearned finance charges and insurance premiums being given through use of the "Rule of 78s."

d.     Home improvement financing practices.  <u>Fidelity Financial Services, Inc. v. Hicks</u>, 214 Ill.App.3d 398, 574 N.E.2d 15 (1st Dist. 1991), leave to appeal denied, 141 Ill.2d 539, 580 N.E.2d 112; <u>Heastie v. Community Bank of Greater Peoria</u>,  690 F.Supp. 716 (N.D.Ill. 1989), later opinion, 125 F.R.D. 669 (N.D.Ill. 1990), later opinions, 727 F.Supp. 1133 (N.D.Ill. 1990), and 727 F.Supp. 1140 (N.D.Ill. 1990).  <u>Heastie</u> granted certification of a class of over 6,000 in a home improvement fraud case.

e.     Arbitration clauses.  <u>Wrightson v. ITT Financial Services</u>, 617 So.2d 334 (Fla. 1st DCA 1993).

f.     Insurance packing.  <u>Elliott v. ITT Corp.</u>, 764 F.Supp. 102 (N.D.Ill. 1990), later opinion, 150 B.R. 36 (N.D.Ill. 1992).

18.     **Automobile leases:**  The firm has brought a number of a cases alleging illegal charges and improper disclosures on automobile leases, mainly as class actions.  Decisions in these cases include <u>Lundquist v. Security Pacific Automotive Financial Services Corp.</u>, Civ. No. 5:91-754 (TGFD) (D.Conn.), <u>aff'd</u>, 993 F.2d 11 (2d Cir. 1993); <u>Kedziora v. Citicorp Nat'l Services, Inc.</u>, 780 F.Supp. 516 (N.D.Ill. 1991), later opinion, 844 F.Supp. 1289 (N.D.Ill. 1994), later opinion, 883 F.Supp. 1144 (N.D.Ill. 1995), later opinion, 1995 U.S.Dist. LEXIS 12137 (N.D.Ill., Aug. 18, 1995), later opinion, 1995 U.S.Dist. LEXIS 14054 (N.D.Ill., Sept. 25, 1995); <u>Johnson v. Steven Sims Subaru and Subaru Leasing</u>, 1993 U.S.Dist. LEXIS 8078 (N.D.Ill., June 9, 1993), and 1993 U.S.Dist. LEXIS 11694 (N.D.Ill., August 20, 1993); <u>McCarthy v. PNC Credit Corp.</u>, 1992 U.S.Dist. LEXIS 21719 (D.Conn., May 27, 1992); <u>Kinsella v. Midland Credit Mgmt., Inc.</u>, 1992 U.S.Dist. LEXIS 1405, 1992 WL 26908 (N.D.Ill. 1992); <u>Highsmith v. Chrysler Credit Corp.</u>, 18 F.3d 434 (7th Cir. 1994); <u>Black v. Mitsubishi Motors Credit of America, Inc.</u>, 1994 U.S.Dist. LEXIS 11158 (N.D.Ill., August 10, 1994); <u>Simon v. World Omni</u>

Leasing Inc., 146 F.R.D. 197 (S.D.Ala. 1992). Settlements in such cases include Shepherd v. Volvo Finance North America, Inc., 1-93-CV-971 (N.D.Ga.)($8 million benefit); McCarthy v. PNC Credit Corp., 291 CV 00854 PCD (D.Conn.); Lynch Leasing Co. v. Moore, 90 CH 876 (Circuit Court of Cook County, Illinois) (class in auto lease case was certified for litigation purposes, partial summary judgment was entered, and case was then settled); Blank v. Nissan Motor Acceptance Corp., 91 L 8516 (Circuit Court of Cook County, Illinois); Mortimer v. Toyota Motor Credit Co., 91 L 18043 (Circuit Court of Cook County, Illinois); Duffy v. Security Pacific Automotive Financial Services, Inc., 93-729 IEG (BTM) (S.D.Cal., April 28, 1994).

19.    Lundquist and Highsmith are leading cases; both held that commonly-used lease forms violated the Consumer Leasing Act. As a result of the Lundquist case, the Federal Reserve Board completely revamped the disclosure requirements applicable to auto leases, resulting in vastly improved disclosures to consumers.

20.    **Collection practices:** The firm has brought a number of cases under the Fair Debt Collection Practices Act, both class and individual. Decisions in these cases include: Jenkins v. Heintz, 25 F.3d 536 (7th Cir. 1994), aff'd 115 S.Ct. 1489, 131 L.Ed.2d 395 (1995); Johnson v. Revenue Management Corp., 169 F.3d 1057, 1999 U.S. App. LEXIS 3142 (7th Cir. 1999); Keele v. Wexler & Wexler, 1996 U.S.Dist. LEXIS 3253 (N.D.Ill., March 18, 1996) (class), 1995 U.S.Dist. LEXIS 13215 (N.D.Ill. 1995) (merits), aff'd, 149 F.3d 589, 1998 U.S.App. LEXIS 15029 (7th Cir. 1998); Mace v. Van Ru Credit Corp., 109 F.3d 338, 1997 U.S.App. LEXIS 5000 (7th Cir., Mar. 17, 1997); Maguire v. Citicorp Retail Services, Inc., 147 F.3d 232, 1998 U.S.App. LEXIS 16112 (2d Cir. 1998); Young v. Citicorp Retail Services, Inc., 1998 U.S.App. LEXIS 20268 (2d Cir. 1998); Charles v. Lundgren & Assocs.. P.C., 119 F.3d 739, 1997 U.S. App. LEXIS 16786 (9th Cir. 1997); Avila v. Rubin, 84 F.3d 222 (7th Cir. 1996), aff'g Avila v. Van Ru Credit Corp., 1995 U.S.Dist. LEXIS 461 (N.D.Ill., Jan. 10, 1995), later opinion, 1995 U.S.Dist. LEXIS 1502 (N.D.Ill., Feb. 6, 1995), later opinion, 1995 U.S.Dist. LEXIS 17117 (N.D.Ill., Nov. 14, 1995); Tolentino v. Friedman, 833 F.Supp. 697 (N.D.Ill. 1993), aff'd in part and rev'd in part, 46 F.3d 645 (7th Cir. 1995); Blakemore v. Pekay, 895 F.Supp.972 (N.D.Ill. 1995); Oglesby v. Rotche, 1993 U.S.Dist. LEXIS 15687 (N.D.Ill., Nov. 4, 1993), later opinion, 1994 U.S.Dist. LEXIS 4866 (N.D.Ill., April 15, 1994); Laws v. Cheslock, 1999 U.S.Dist. LEXIS 3416 (N.D.Ill., Mar. 8, 1999);Davis v. Commercial Check Control, Inc., 1999 U.S. Dist. LEXIS 1682 (N.D.Ill., Feb. 12, 1999); Hoffman v. Partners in Collections, Inc., 1993 U.S.Dist. LEXIS 12702 (N.D.Ill., Sept. 15, 1993); Vaughn v. CSC Credit Services, Inc., 1994 U.S.Dist. LEXIS 2172 (N.D.Ill., March 1, 1994), adopted, 1995 U.S.Dist. LEXIS 1358 (N.D.Ill., Feb. 3, 1995); Beasley v. Blatt, 1994 U.S.Dist. LEXIS 9383 (N.D.Ill., July 14, 1994); Taylor v. Fink, 1994 U.S.Dist. LEXIS 16821 (N.D.Ill., Nov. 23, 1994); Gordon v. Fink, 1995 U.S.Dist. LEXIS 1509 (N.D.Ill., Feb. 7, 1995); Brujis v. Shaw, 876 F.Supp. 198 (N.D.Ill. 1995). Settlements in such cases include Boddie v. Meyer, 93 C 2975 (N.D.Ill.); and Cramer v. First of America Bank Corporation, 93 C 3189 (N.D.Ill.).

21.    Jenkins v. Heintz is a leading decision regarding the liability of attorneys under the Fair Debt Collection Practices Act. I argued it before the Supreme Court and Seventh

8

Circuit. <u>Avila v. Rubin</u> is a leading decision on phony "attorney letters."

      **22.**   **Class action procedure:**  Important decisions include <u>Crawford v. Equifax Payment Services, Inc.</u>, 201 F.3d 877 (7th Cir. 2000); <u>Blair v. Equifax Check Services, Inc.</u>, 181 F.3d 832 (7th Cir. 1999); <u>Mace v. Van Ru Credit Corp.</u>, 109 F.3d 338, 344 (7th Cir. 1997); and <u>Gordon v. Boden</u>, 224 Ill.App.3d 195, 586 N.E.2d 461 (1st Dist. 1991).

      **23.**   **Bankruptcy:**  Cathleen Combs successfully argued the first Court of Appeals case to hold that a bankruptcy debtor induced to pay a discharged debt by means of an invalid reaffirmation agreement may sue to recover the payment. <u>Bessette v. Avco Financial Services</u>, 99-2291 (1st Cir., October 27, 2000).

      **24.**   **Landlord-tenant**:  The firm has brought a number of class actions against landlords for failing to pay interest on security deposits or commingling security deposits.

      **25.**   Some of the other reported decisions in our cases include: <u>Elder v. Coronet Ins. Co.</u>, 201 Ill.App.3d 733, 558 N.E.2d 1312 (1st Dist. 1990); <u>Smith v. Keycorp Mtge., Inc.</u>, 151 Bankr. 870 (N.D.Ill. 1992); <u>Gordon v. Boden</u>, 224 Ill.App.3d 195, 586 N.E.2d 461 (1st Dist. 1991), leave to appeal denied, 144 Ill.2d 633, 591 N.E.2d 21, cert. denied, U.S. (1992); <u>Armstrong v. Edelson</u>, 718 F.Supp. 1372 (N.D.Ill. 1989); <u>Newman v. 1st 1440 Investment, Inc.</u>, 1993 U.S.Dist. LEXIS 354 (N.D.Ill. 1993); <u>Mountain States Tel. & Tel. Co. v. District Court</u>, 778 P.2d 667 (Colo. 1989); <u>Disher v. Fulgoni</u>, 124 Ill.App.3d 257, 464 N.E.2d 639, 643 (1st Dist. 1984); <u>Harman v. Lyphomed, Inc.</u>, 122 F.R.D. 522 (N.D.Ill. 1988); <u>Haslam v. Lefta, Inc.</u>, 1992 U.S.Dist. LEXIS 3623 (N.D.Ill., March 25, 1994); <u>Source One Mortgage Services Corp. v. Jones</u>, 1994 U.S.Dist. LEXIS 333 (N.D.Ill., Jan. 13, 1994).

      **26.**   Gordon v. Boden is the first decision approving "fluid recovery" in an Illinois class action. <u>Elder v. Coronet Insurance</u> held that an insurance company's reliance on lie detectors to process claims was an unfair and deceptive trade practice.

      **27.**   The majority of our practice is contingent fee litigation on the plaintiff's side. We I regularly represent plaintiffs in contingent fee cases in Federal Court in Illinois and Indiana, and in Illinois state courts. We frequently work with other plaintiff's lawyers who handle cases on a contingent fee basis. We are generally familiar with the range of contingent fee percentages charged by plaintiff's lawyers.

      **28.**   The hourly rates for the attorneys set forth below, are the same as the regular current rates charged for their services in other contingent matters in class action litigation, and to occasional paying clients. The firm adjusts them annually to account for inflation and increasing experience and they are consistent with the rates charged by attorneys of comparable experience and expertise in the Chicago area. The rates listed and used in this case represent rates previously approved in a number of cases plus an annual adjustment.

**29.**    Examples of the approval of counsel's rates include:

**a.**    Rates of $385 for Daniel A. Edelman, Cathleen M. Combs and James O. Latturner, $190 for Thomas Soule, and $100-$105 for legal assistants were approved in <u>Smith v. American Revenue Corp.</u>, 2:04-cv-199-PRC (N.D.Ind., Oct. 24, 2005).

**b.**    Rates of $425 for James O. Latturner, $190/ hour for Alex Burke were approved in <u>Schulz v. Oxford Management</u>, 05 C 3133 (N.D.Ill., Oct. 21, 2005), by Judge Leinenweber. His order is attached as <u>Appendix A</u>.

**c.**    Rates of $400/hour for Daniel A. Edelman, Cathleen M. Combs and James O. Latturner, a rate of $335/hour for Tara L. Goodwin, and a rate of $190/hour for Francis R. Greene, were approved by Judge Darrah in <u>Levin v. Kluever & Platt LLC</u>, No. 03 C 2160 (N.D.Ill September 15, 2004)(Darrah, J.). A transcript is attached as <u>Appendix B</u>.

**d.**    Rates of $370/hour for Daniel A. Edelman and James O. Latturner, and a rate of $210/hour for Michelle R. Teggelaar, were approved by Judge Holderman in <u>Payton v. New Century Mortgage Co.</u>, 2004 WL 524693 (N.D. Ill. 2004).

**e.**    Rates of $360/hour for Daniel A. Edelman, Cathleen M. Combs, and James O. Latturner, a rate of $310 for Tara L. Goodwin, and a rate of $200/hour for Michelle R. Teggelaar, were approved by Judge Lefkow in <u>Johnson v. Fast Cash Advance, Inc.</u>, No. 00 C 1875 (United States District Court, Northern District of Illinois, February 25, 2003).

**f.**    Rates of $350/hour for Daniel A. Edelman, Cathleen M. Combs, and James O. Latturner, a rate of $300/hour for Tara L. Goodwin, and a rate of $200/hour for Michelle R. Teggelaar and Keith J. Keogh, were approved by Judge Billik in <u>Rentas v. Vacation Break U.S.A.</u>, No. 98 CH 02782 (Circuit Court of Cook County, May 9, 2002).

**g.**    Rates of $300/hour were approved by Judge Kennelly for Daniel A. Edelman and James O. Latturner, and a rate of $275/hour for Cathleen M. Combs in <u>Hobson v. Lincoln Insurance Agency, Inc.</u>, 2002 WL 338161 (N.D. Ill. 2002). Judge Kennelly also approved rates of $150/hour for associates James S. Harkness and Charles H. Lee and $135/hour for associate Francis R. Greene.

**h.**    Rates of $275 were approved by the Seventh Circuit Court of Appeals in <u>Tolentino v. Friedman</u>, 46 F.3d 645 (1995) for Mr. Edelman.

**i.**    Rates of $330 for Mr. Edelman and $170 for Charles H. Lee were approved in <u>Clay v. Johnson</u>, 97 C 6007 (N.D.Ill.), for work done in 1997-1999.

**(1)**    $330/ hour for Mr. Edelman and Mr. Latturner were approved by

10

Judge Boharic in <u>Johnson v. Thomas</u>, 97 CH 10793 (Cir. Ct. Cook Co., April 24, 2001), a mortgage foreclosure action in which the borrower successfully prosecuted a Truth in Lending counterclaim through trial and rescinded the mortgage.

      **(2)**     Rates were approved in <u>Avila v. Van Ru Credit Corp.</u>, 1995 U.S. Dist. LEXIS 17117 (N.D.Ill., Nov. 14, 1995), <u>aff'd</u>, 84 F.3d 222 (7th Cir. 1996), as follows: Daniel A. Edelman, $275.00; Cathleen M. Combs, $235.00; James O. Latturner, $275.00.

      **(3)**     Edelman, Combs & Latturner was paid in excess of $25,000 by an estate in connection with a usury case using the same rates as were approved in <u>Avila</u>.  <u>Stob v. F.G.L.M. Enterprises</u>, 91 L 17357 (Cir.Ct. of Cook County).  All of our bills were reviewed by principal counsel for the estate, who hired us, and found unobjectionable.

      **30.**     In determining the rates charged by the firm charges and requests, Counsel consults surveys of rates charged by other Chicago law firms.  Such surveys have been relied upon by courts in awarding fees.  <u>E.g.</u>, <u>FDIC v. Morris</u>, 1992 U.S. Dist. LEXIS 9439 (N.D. Ill., June 29, 1992); <u>Alliance to End Repression v. City of Chicago</u>, 1993 U.S. Dist. LEXIS 1972 (N.D. Ill., Feb. 22, 1993).

      **31.**     I am reasonably confident that the rates are accurate, based on my personal knowledge of large firm rates when I was at Kirkland & Ellis and Reuben & Proctor, my general awareness of rates in the legal community, court awards, negotiations with defendants, and discussions with other attorneys.

      **32.**     The rates we used are also consistent with fee awards by courts in this or other comparable areas for comparable work:

      **a.**     For example, in <u>Covington v. District of Columbia</u>, 839 F. Supp. 894 (D.D.C., December 13, 1993), Judge Lamberth found, on the basis of court-approved surveys of rates in the Washington, D.C., area, that it was appropriate to award $260 per hour to attorneys with between 11 and 19 years experience for the time period 1992-93.  He further found that it was appropriate to have an annual increment of $10 per year or, alternatively, to multiply by 103.4% in accordance with the Consumer Price Index (the result is approximately the same).  He also noted that it had been relied upon by six other District Judges in the District of Columbia and the Court of Appeals for the District of Columbia Circuit.  Judge Lamberth awarded current rates for all work done in the past, in lieu of making the award at the then-current rate and awarding interest on it.

      **b.**     The figures used in the <u>Covington</u> case have been updated each year by the office of the U. S. Attorney for the District of Columbia.  The updated figures (through 2006) are in the chart attached as <u>Appendix C</u>, available on the Internet site of the U. S Attorney's office ("Laffey Matrix", after <u>Laffey v. Northwest Airlines, Inc.</u>, 572 F.Supp. 354 (D.D.C. 1983).

**c.**    The use of the Laffey Matrix has been either expressly or implicitly approved by the courts in the Northern District and within the Seventh Circuit, at a minimum as a guide for adjusting attorney fee rates based on experience and cost of living increases. See <u>Arch v. Glendale Nissan</u>, 2005 WL 1421140, *1 (N.D. Ill. 2005); <u>Samuel v. Barnhart</u>, 316 F.Supp.2d 768, 781-82 (E.D. Wis. 2004); <u>Sadler v. Barnhart</u>, 2004 WL 419908, *3 (N.D. Ill. 2004); <u>Covington-McIntosh v. Mount Glenwood Memory Gardens South, Inc.</u>, 2004 WL 2700482, *4 (N.D. Ill. 2004); <u>Embry v. Barnhart</u>, 2003 WL 22478769, *2 (N.D. Ill. 2003). See also <u>In re HPL Technologies, Inc. Securities Litigation</u>, 366 F.Supp.2d 912, 921 (N.D. Call. 2005) (adjusting the Laffey Matrix rates higher, to account for a higher cost of living in the San Francisco Bay area).

**d.**    The last case is instructive insofar it shows that the Laffey Matrix\ is applicable to the Chicago area. As explained in <u>HPL Technologies</u>, one must compare market rates to comparable market rates. The issue becomes, whether market rates in the D.C. area, which, in part, are based on the cost of living, are comparable to the market rates in Chicago. Based on the locality pay differentials within the federal courts, which may be found at http://www.opm.gov/oca/05tables/indexGS.asp (Office of Personnel Management webpage), the court in <u>HPL Technologies</u> increased the rates for the San Francisco by 9%, because the locality pay differentials were +15.98% for the Washington-Baltimore area, and +26.39% for the San Francisco-Oakland-San Jose area.

**e.**    The locality pay differential for Chicago is +19.70%, versus +15.98% for the D.C. area. See **Appendices D and E** (relevant pages from the Office of Personnel Management locality pay differentials). Thus, to account for a higher cost of living in Chicago, as compared to Washington, D.C., the Laffey Matrix rates should be adjusted upward 4%.

**f.**    In <u>Alliance to End Repression v. City of Chicago</u>, 1993 U.S.Dist. LEXIS 1972 (N.D.Ill., Feb. 22, 1993), then-Magistrate Judge Gottschall approved rates for experienced litigators in a civil rights case of $225 in 1991 and $250 in 1992.

**g.**    In <u>Lewis v. General Employment Enterprises, Inc.</u>, 1992 U.S.Dist. LEXIS 5464 (N.D.Ill., April 14, 1992), Judge Rovner approved rates for experienced litigators of $195, $200 and $300 for work done in 1991-92, in a case that was "not particularly difficult or risky".

**h.**    In <u>Spicer v. Chicago Board Options Exchange</u>, 844 F.Supp. 122 (N.D.Ill. 1993), Judge Will found appropriate rates of $275 and $240 to the partners in a small firm with a practice somewhat comparable to our own, $100-120 for junior associates, $140 and $150 for associates with some experience, and $65 and $70 for legal assistants.

**33.**    The usual rates which I and the others in my firm charge fee-paying clients are as follows:

**a.**   Daniel Edelman, Cathleen Combs, and James Latturner (partners): $425 an hour;

**b.**   Tara Goodwin (partner): $385 an hour;

**c.**   Michelle R. Teggelaar (partner): $275 an hour;

**d.**   Associates: $190-250 an hour (based on experience); and

**e.**   Paralegals: $100-$105 an hour (based upon experience).

**34.**   All attorneys and legal assistants in my firm are required to and do in fact keep track of their time on a contemporaneous basis, on computer. Everyone enters their time into a computer program, by case number. The computer system automatically sorts the entries by case and generates totals. Expenses are entered into the same computer program as they are incurred. The printouts for this case are attached as Appendix F.

**35.**   As set forth in Appendix F, my firm has incurred fees of $8,823.00 and costs of $578.53. In my judgment, the time spent on this case by myself and others in my firm was reasonably necessary for the prosecution of the case. Furthermore, the expenses were incurred for the benefit of the Plaintiff and the class members and, in my judgment, were reasonably necessary for the prosecution of the case and were reasonably incurred in connection with our work on the case. These expenses are consistent with what the private market would bear and are billed with the same level of detail that paying clients find satisfactory

THIS DECLARATION IS MADE BY COUNSEL IN HIS PLACE AS AN OFFICER OF THE COURT.

s/Daniel A. Edelman
Daniel A. Edelman

EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
120 S. LaSalle Street, 18th Floor
Chicago, Illinois 60603
(312) 739-4200
(312) 419-0379 (FAX)

K:\general\daefee declaration with associates 12 20 05 wpd

13

# APPENDIX A

Order Form (01/2005)    Case 1.05-cv-03133    Document 17    Filed 10/21/2005    Page 1 of 3

## United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Harry D. Leinenweber | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 05 C 3133 | **DATE** | October 21, 2005 |
| **CASE TITLE** | Daniel Schultz vs. Oxford Mgmt. Servs., Inc. | | |

**DOCKET ENTRY TEXT:**

Plaintiff's Motion for Attorneys' Fees and Costs [14-1] is **granted**.  The Court awards Plaintiff $2427.07, which includes $2108.00 in attorneys' fees and $319.07 in costs.

☑[ For further details see text below ]    Docketing to mail notices

---

| STATEMENT |
|---|

On July 12, 2005, the Court entered judgment in favor of Plaintiff pursuant to Defendant's Rule 68 Offer of Judgment in this Fair Debt Collection Practices Act ("FDCPA") case.  Thereafter, the parties engaged in discussions to determine the amount of Plaintiff's reasonable attorneys' fees and costs.  The discussions broke down over a few discrete points of contention -- such as $9.07 in postage and $40.00 for a process server -- and Plaintiff filed the present Motion for Attorneys' Fees and Costs on August 31, 2005.  The Court gave Defendant until September 28, 20005 to respond to Plaintiff's motion [16-1].  Defendant failed to file a response or other objection.  For the following reasons, Plaintiff's motion is **granted**.

District courts have discretion in determining to what extent prevailing parties may be awarded costs.  *See Weeks v. Samsung Heavy*

## STATEMENT

*Indus. Co., Ltd.*, 126 F.3d 926, 945 (7th Cir. 1997) (citing 28 U.S.C. §

1920; Fed. R. Civ. P. 54(d)). Under the FDCPA, a prevailing party is

also entitled to reasonable attorney's fees as part of costs. *Zagorski*

*v. Midwest Billing Servs., Inc.*, 128 F.3d 1164, 1165-66 (7th Cir. 1997)

(citing 15 U.S.C. § 1692k(a)(3); 42 U.S.C. § 1988(b)). For Plaintiff to

recover its costs, the Court must find that the expenses are reasonable.

See *Deimer v. Cincinnati Sub-Zero Products, Inc.*, 58 F.3d 341, 345 (7th

Cir. 1995).

Plaintiff seeks $2108.00 in attorneys' fees and $319.07 in costs.

These fees and costs include the time spent on the case prior to the

Court's entry of judgment and the additional time spent negotiating and

filing the present motion for fees and costs. The Court finds the

request for fees and costs wholly reasonable in light of Plaintiff's

demonstrated good faith attempts to come to an agreement over the

appropriate amount for fees and costs. (*See* Mtn., Exhs.) Plaintiff's

fee request is reasonable both in the time frame and hourly rate, which

was calculated using the accepted "lodestar" method. (*Id.*, Appx. A).

The costs are reasonable both in content and in scope, which is limited

to only reimbursement requests for the time frame prior to the Court's

entry of judgment.

Defendant's unwillingness to come to an agreement because of their

objections over postage, process server, and photocopying charges

totaling less than $100.00 is patently unreasonable. Plaintiff even

offered to cut their photocopying charges by more than half, from $43.54

to $20.00, and informed Defendant that if the parties could not reach an

agreement, then Plaintiff would seek additional fees for time spent on

Case 1:05-cv-03133   Document 17   Filed 10/21/2005   Page 3 of 3

## STATEMENT

the present motion.   (*Id.*, Exh. B).   Further, Defendant's suggestion

during the negotiations "that the Court should refuse to award any costs

because the complaint was frivolous" is wholly unwarranted and

contradicts Defendant's Offer of Judgment to pay reasonable fees and

costs.   (*Id.* ¶ 9 & Exh. B).

Accordingly, the Court **grants** Plaintiff's motion and awards

Plaintiff $2427.07, which includes $2108.00 in attorneys' fees and

$319.07 in costs (which discounts the photocopying charges by more than

half, from $341.32 to $319.17 total costs).

# APPENDIX B

1

1  IN THE UNITED STATES DISTRICT COURT
   FOR THE NORTHERN DISTRICT OF ILLINOIS
2          EASTERN DIVISION

3

4  ALLEN LEVIN,                          ) No. 03 C 2160
                                         )
5              Plaintiff,                ) Chicago, Illinois
                                         ) September 15, 2004
6        v.                              ) 9:45 a.m.
                                         )
7  KLUEVER & PLATT, LLC,                 ) Fairness Hearing
                                         )
8              Defendant.                )
                                         )
9                                        )

10          TRANSCRIPT OF PROCEEDINGS
     BEFORE THE HONORABLE JOHN W. DARRAH
11
   APPEARANCES:
12
   For the Plaintiff:      EDELMAN, COMBS, LATTURNER
13                         & GOODWIN, LLC, by
                           MR. FRANCIS RICHARD GREENE
14                         120 South LaSalle Street - 18th Floor
                           Chicago, Illinois 60603
15
   For the Defendant:      HINSHAW & CULBERTSON, by
16                         MR. DAVID MATTHEW SCHULTZ
                           222 North LaSalle Street - Suite 300
17                         Chicago, Illinois 60601

18

19        Valarie Harris Ramsey - Official Court Reporter
             219 South Dearborn Street - Room 1212
20                 Chicago, Illinois 60604
                       (312) 435-6891
21

22

23

24

25

1          THE CLERK:  03 C 2160, Levin versus Kluever & Platt.
2          MR. GREENE:  Good morning, Your Honor.  Francis
3  Greene for the plaintiff.
4          THE COURT:  Good morning, Mr. Greene.
5          MR. SCHULTZ:  David Schultz for defendant.
6          THE COURT:  Good morning, Mr. Schultz.
7          I'm sorry for the delay, counsel.
8          I had looked at this.  I reviewed the -- I read the
9  memorandum in support of the settlement agreement.  I looked
10 at the settlement agreement itself.  And you've also attached
11 a proposed order and additional material supporting the prayed
12 for relief as to attorney's fees and the like.
13         The final order I find is fair and reasonable, and I
14 find that the appropriate notice has been provided.  I find
15 that the class is appropriate pursuant to Rule 23.  I will
16 approve the terms and conditions of the settlement agreement,
17 and I find that the agreement was made in good faith and is a
18 fair resolution of the dispute between the parties.
19         Specifically as to the issue of attorney's fees, I
20 find that the amount prayed for, that's $19,500, is fairly
21 supported by the material attached in support of the prayer
22 for fees.  I find that the amount of fees as well as the
23 proposed hourly rate is fair and reasonable and is consistent
24 with a matter of this nature in this community.  And,
25 therefore, I will enter an order of final approval.

1     You've prepared a proposed order and attached it to
2   an exhibit.  Shall I just use this order, or do you have a
3   clean one?

4       MR. GREENE:  There are actually kind of two small
5   points that Your Honor needs to decide and then -- because the
6   final order that I submitted kind of gives two different
7   options.  One issue is we -- under the settlement agreement,
8   Mr. Levin, the plaintiff, is going to get a thousand dollars.
9   We've asked for an additional 500 hundred dollars for his
10  services as a class representative.

11      THE COURT:  I see.  And I'm going to award 1500.
12  I'll award the additional 500.

13      MR. SCHULTZ:  Can I comment to that, Your Honor?

14      THE COURT:  Sure.  Lets hear an argument on $500.  Go
15  ahead.  No, go ahead.

16      MR. SCHULTZ:  Either the class will get 6,000 or will
17  get 5500, so it's taking something from the class, and the
18  statute says that what the court can award is a thousand, 69
19  2K.

20      THE COURT:  Is that right, Mr. Greene, that I don't
21  have the authority to award in excess of a thousand?

22      MR. GREENE:  For his statutory damages.

23      THE COURT:  What's the authority, then, for the
24  additional 500 bucks?

25      MR. GREENE:  The authority is this is just something

4

1 | that's done, I mean.

2 | THE COURT:  Then I will amend what I said a moment

3 | ago and award one thousand dollars.

4 | What's the other difficulty in the order?

5 | MR. GREENE:  259 claim forms were received on a

6 | timely basis.  There were 21 that were received after the due

7 | date, and we're requesting that those 21 claim forms that were

8 | received that were untimely be deemed timely and that they --

9 | THE COURT:  Any objection to that?

10 | MR. SCHULTZ:  No objection.

11 | THE COURT:  I think that's fair and will deem the

12 | additional 21 claims to be deemed as having been received in a

13 | timely fashion.

14 | MR. GREENE:  In light of Your Honor's rulings, maybe

15 | what I'll do is just bring a revised order later in the day.

16 | THE COURT:  Okay.  Thanks.

17 | MR. GREENE:  Thank you.

18 | MR. SCHULTZ:  Thank you.

19 | *    *    *    *    *    *    *

20 | C E R T I F I C A T E

21 |

22 | I hereby certify that the foregoing is a true and

23 | correct transcript of the above-entitled matter.

24 |

25 | _____          __/6/1/0/_____
Official Court Reporter                              Date

# APPENDIX C



## UNITED STATES ATTORNEY'S OFFICE
### FOR THE DISTRICT OF COLUMBIA
555 4TH STREET, NW
WASHINGTON, DC 20530
(202) 514-7566

HOME

U.S. ATTORNEY

ABOUT US

DIVISIONS

COMMUNITY
PROSECUTION

PROGRAMS
FOR YOUTH

VICTIM WITNESS
ASSISTANCE

PARTNERSHIPS

PRESS RELEASES

EMPLOYMENT

ESPAÑOL

CONTACT US

LINKS

SITE MAP

### LAFFEY MATRIX 2003 - 2006

Years (Rate for June 1 - May 31, based on prior year's CPI-U)

| Experience | 03-04 | 04-05 | 05-06 |
|---|---|---|---|
| 20+ years | 380 | 390 | 405 |
| 11-19 years | 335 | 345 | 360 |
| 8-10 years | 270 | 280 | 290 |
| 4-7 years | 220 | 225 | 235 |
| 1-3 years | 180 | 185 | 195 |
| Paralegals & | 105 | 110 | 115 |
| Law Clerks | | | |

### Explanatory Notes

1  This matrix of hourly rates for attorneys of varying experience levels and paralegals/law clerks has been prepared by the Civil Division of the United States Attorney's Office for the District of Columbia. The matrix is intended to be used in cases in which a "fee-shifting" statute permits the prevailing party to recover "reasonable" attorney's fees  See, e g , 42 U S C  § 2000e-5(k) (Title VII of the 1964 Civil Rights Act); 5 U S C  § 552(a)(4)(E) (Freedom of Information Act); 28 U S C  § 2412 (b) (Equal Access to Justice Act)  The matrix does not apply in cases in which the hourly rate is limited by statute  See 28 U S C  § 2412(d)

2  This matrix is based on the hourly rates allowed by the District Court in *Laffey v  Northwest Airlines, Inc* , 572 F  Supp  354 (D D C  1983), *aff'd in part, rev'd in part on other grounds*, 746 F 2d 4 (D C  Cir  1984), *cert  denied*, 472 U S  1021 (1985)  It is commonly referred to by attorneys and federal judges in the District of Columbia as the "Laffey Matrix" or the "United States Attorney's Office Matrix." The column headed "Experience" refers to the years following the attorney's graduation from law school  The various "brackets" are intended to correspond to "junior associates" (1-3 years after law school graduation), "senior associates" (4-7 years), "experienced federal court litigators" (8-10 and 11-19 years), and "very experienced federal court litigators" (20 years or more)  See *Laffey*, 572 F  Supp  at 371

3  The hourly rates approved by the District Court in *Laffey* were for work done principally in 1981-82, The Matrix begins with those rates  See *Laffey*, 572 F  Supp  at 371 (attorney rates) & 386 n 74 (paralegal and law clerk rate)  The rates for subsequent yearly periods were determined by adding the change in the cost of living for the Washington, D C  area to the applicable rate for the prior year, and then rounding to the nearest multiple of $5 (up if within $2 of the next multiple of $5)  The result is subject to adjustment if appropriate to ensure that the relationship between the highest rate and the lower rates remains reasonably constant  Changes in the cost of living are measured by the Consumer Price Index for All Urban Consumers (CPI-U) for Washington-Baltimore, DC-MD-VA-WV, as announced by the Bureau of Labor Statistics for May of each year

4  Use of an updated *Laffey* Matrix was implicitly endorsed by the Court of Appeals in *Save Our Cumberland Mountains v  Hodel*, 857 F 2d 1516, 1525 (D C  Cir  1988) (en banc)  The Court o

Civil Division - United States Attorney's Office for the District of Columbia    Page 2 of 2



Appeals subsequently stated that parties may rely on the updated *Laffey* Matrix prepared by the United States Attorney's Office as evidence of prevailing market rates for litigation counsel in the Washington, D.C. area  See *Covington v. District of Columbia*, 57 F 3d 1101, 1105 & n 14, 1109 (D C  Cir  1995), *cert. denied*, 516 U S. 1115 (1996)  Lower federal courts in the District of Columbia have used this updated *Laffey* Matrix when determining whether fee awards under fee-shifting statutes are reasonable  *See, e g , Blackman v  District of Columbia*, 59 F  Supp  2d 37, 43 (D.D C  1999); *Jefferson v  Milvets System Technology, Inc.*, 986 F Supp 6, 11 (D D C  1997); *Ralph Hoar & Associates v  Nat'l Highway Transportation Safety Admin* , 985 F. Supp  1, 9-10 n 3 (D D C  1997); *Martini v. Fed  Nat'l Mtg Ass'n*, 977 F  Supp 482, 485 n 2 (D D C  1997); *Park v  Howard University*, 881 F  Supp  653, 654 (D D C  1995)

Home  |  DOJ  |  EOUSA  |  DOJ For Kids  |  Privacy Policy

# APPENDIX D

## SALARY TABLE 2005-CHI
### INCORPORATING THE 2.50% GENERAL SCHEDULE INCREASE AND A LOCALITY PAYMENT OF 19.70%
### FOR THE LOCALITY PAY AREA OF CHICAGO-NAPERVILLE-MICHIGAN CITY, IL-IN-WI
(See http://www.opm.gov/oca/05tables/indexlsp.asp for definitions of locality pay areas.)

(TOTAL INCREASE 3.75%)
EFFECTIVE JANUARY 2005
Hourly Basic (B) Rates by Grade and Step
Hourly Overtime (O) Rates by Grade and Step

| GRADE | B/O | STEP 1 | STEP 2 | STEP 3 | STEP 4 | STEP 5 | STEP 6 | STEP 7 | STEP 8 | STEP 9 | STEP 10 |
|---|---|---|---|---|---|---|---|---|---|---|---|
| GS-1 | B | $ 9.19 | 9.49 | 9.80 | 10.10 | 10.41 | 10.59 | 10.89 | 11.19 | 11.21 | $ 11.49 |
|  | O | 13.79 | 14.24 | 14.70 | 15.15 | 15.62 | 15.89 | 16.34 | 16.79 | 16.82 | 17.24 |
| 2 | B | 10.33 | 10.57 | 10.92 | 11.21 | 11.33 | 11.66 | 12.00 | 12.33 | 12.66 | 13.00 |
|  | O | 15.50 | 15.86 | 16.38 | 16.82 | 17.00 | 17.49 | 18.00 | 18.50 | 18.99 | 19.50 |
| 3 | B | 11.27 | 11.64 | 12.02 | 12.40 | 12.77 | 13.15 | 13.52 | 13.90 | 14.27 | 14.65 |
|  | O | 16.91 | 17.46 | 18.03 | 18.60 | 19.16 | 19.73 | 20.28 | 20.85 | 21.41 | 21.98 |
| 4 | B | 12.65 | 13.07 | 13.49 | 13.91 | 14.34 | 14.76 | 15.18 | 15.60 | 16.02 | 16.44 |
|  | O | 18.98 | 19.61 | 20.24 | 20.87 | 21.51 | 22.14 | 22.77 | 23.40 | 24.03 | 24.66 |
| 5 | B | 14.15 | 14.62 | 15.10 | 15.57 | 16.04 | 16.51 | 16.99 | 17.46 | 17.93 | 18.40 |
|  | O | 21.23 | 21.93 | 22.65 | 23.36 | 24.06 | 24.77 | 25.49 | 26.19 | 26.90 | 27.60 |
| 6 | B | 15.78 | 16.31 | 16.83 | 17.36 | 17.88 | 18.41 | 18.93 | 19.46 | 19.98 | 20.51 |
|  | O | 23.67 | 24.47 | 25.25 | 26.03 | 26.82 | 27.62 | 28.40 | 29.19 | 29.97 | 30.77 |
| 7 | B | 17.53 | 18.11 | 18.70 | 19.29 | 19.87 | 20.45 | 21.04 | 21.62 | 22.21 | 22.79 |
|  | O | 26.30 | 27.17 | 28.05 | 28.94 | 29.81 | 30.68 | 31.56 | 32.43 | 33.32 | 34.19 |
| 8 | B | 19.42 | 20.07 | 20.71 | 21.36 | 22.00 | 22.65 | 23.30 | 23.95 | 24.59 | 25.24 |
|  | O | 29.13 | 30.11 | 31.07 | 32.04 | 33.00 | 33.98 | 34.95 | 35.43 | 35.43 | 35.43 |
| 9 | B | 21.45 | 22.16 | 22.87 | 23.59 | 24.30 | 25.02 | 25.73 | 26.45 | 27.16 | 27.88 |
|  | O | 32.18 | 33.24 | 34.31 | 35.39 | 35.43 | 35.43 | 35.43 | 35.43 | 35.43 | 35.43 |
| 10 | B | 23.62 | 24.41 | 25.19 | 25.98 | 26.77 | 27.55 | 28.34 | 29.13 | 29.92 | 30.70 |
|  | O | 35.43 | 35.43 | 35.43 | 35.43 | 35.43 | 35.43 | 35.43 | 35.43 | 35.43 | 35.43 |
| 11 | B | 25.93 | 26.80 | 27.66 | 28.53 | 29.41 | 30.27 | 31.14 | 32.00 | 32.87 | 33.73 |
|  | O | 35.43 | 35.43 | 35.43 | 35.43 | 35.43 | 35.43 | 35.43 | 35.43 | 35.43 | 35.43 |
| 12 | B | 31.10 | 32.14 | 33.17 | 34.21 | 35.24 | 36.28 | 37.32 | 38.36 | 39.39 | 40.43 |
|  | O | 35.43 | 35.43 | 35.43 | 35.43 | 35.43 | 36.28 | 37.32 | 38.36 | 39.39 | 40.43 |
| 13 | B | 36.99 | 38.22 | 39.45 | 40.68 | 41.91 | 43.14 | 44.38 | 45.61 | 46.84 | 48.07 |
|  | O | 36.99 | 38.22 | 39.45 | 40.68 | 41.91 | 43.14 | 44.38 | 45.61 | 46.84 | 48.07 |
| 14 | B | 43.70 | 45.16 | 46.61 | 48.07 | 49.53 | 50.98 | 52.44 | 53.90 | 55.36 | 56.81 |
|  | O | 43.70 | 45.16 | 46.61 | 48.07 | 49.53 | 50.98 | 52.44 | 53.90 | 55.36 | 56.81 |
| 15 | B | 51.40 | 53.12 | 54.83 | 56.55 | 58.26 | 59.97 | 61.69 | 63.40 | 65.11 | 66.83 |
|  | O | 51.40 | 53.12 | 54.83 | 56.55 | 58.26 | 59.97 | 61.69 | 63.40 | 65.11 | 66.83 |

NOTE: Locality rates of pay are basic pay only for certain purposes—see "Salary Tables for 2005" cover sheet.

# APPENDIX E

## SALARY TABLE 2005-DCB

INCORPORATING THE 2.50% GENERAL SCHEDULE INCREASE AND A LOCALITY PAYMENT OF 15.98%

FOR THE LOCALITY PAY AREA OF WASHINGTON-BALTIMORE-NORTHERN VIRGINIA, DC-MD-PA-VA-WV

(See http://www.opm.gov/oca/05tables/locdef.asp for definitions of locality pay areas.)

(TOTAL INCREASE: 3.71%)

EFFECTIVE JANUARY 2005

*Hourly Basic (B) Rates by Grade and Step*

*Hourly Overtime (O) Rates by Grade and Step*

| GRADE | B/O | STEP 1 | STEP 2 | STEP 3 | STEP 4 | STEP 5 | STEP 6 | STEP 7 | STEP 8 | STEP 9 | STEP 10 |
|---|---|---|---|---|---|---|---|---|---|---|---|
| GS-1 | B | $ 8.90 | 9.20 | 9.49 | 9.79 | 10.08 | 10.26 | 10.55 | 10.84 | 10.98 | $ 11.13 |
|  | O | 13.35 | 13.80 | 14.24 | 14.69 | 15.12 | 15.39 | 15.83 | 16.26 | 16.47 | 16.70 |
| GS-2 | B | 10.01 | 10.24 | 10.58 | 10.86 | 10.98 | 11.30 | 11.62 | 11.95 | 12.27 | 12.59 |
|  | O | 15.02 | 15.36 | 15.87 | 16.29 | 16.47 | 16.95 | 17.43 | 17.93 | 18.41 | 18.89 |
| GS-3 | B | 10.92 | 11.28 | 11.65 | 12.01 | 12.37 | 12.74 | 13.10 | 13.47 | 13.83 | 14.19 |
|  | O | 16.38 | 16.92 | 17.48 | 18.02 | 18.56 | 19.11 | 19.65 | 20.21 | 20.75 | 21.29 |
| GS-4 | B | 12.26 | 12.67 | 13.07 | 13.48 | 13.89 | 14.30 | 14.71 | 15.12 | 15.52 | 15.93 |
|  | O | 18.39 | 19.01 | 19.61 | 20.22 | 20.84 | 21.45 | 22.07 | 22.68 | 23.28 | 23.90 |
| GS-5 | B | 13.71 | 14.17 | 14.63 | 15.09 | 15.54 | 16.00 | 16.46 | 16.92 | 17.37 | 17.83 |
|  | O | 20.57 | 21.26 | 21.95 | 22.64 | 23.31 | 24.00 | 24.69 | 25.38 | 26.06 | 26.75 |
| GS-6 | B | 15.29 | 15.80 | 16.31 | 16.82 | 17.32 | 17.83 | 18.34 | 18.85 | 19.36 | 19.87 |
|  | O | 22.94 | 23.70 | 24.47 | 25.23 | 25.98 | 26.75 | 27.51 | 28.28 | 29.04 | 29.81 |
| GS-7 | B | 16.99 | 17.55 | 18.12 | 18.68 | 19.25 | 19.82 | 20.38 | 20.95 | 21.52 | 22.08 |
|  | O | 25.49 | 26.33 | 27.18 | 28.02 | 28.88 | 29.73 | 30.57 | 31.43 | 32.28 | 33.12 |
| GS-8 | B | 18.81 | 19.44 | 20.07 | 20.69 | 21.32 | 21.95 | 22.57 | 23.20 | 23.83 | 24.45 |
|  | O | 28.22 | 29.16 | 30.11 | 31.04 | 31.98 | 32.93 | 33.86 | 34.32 | 34.32 | 34.32 |
| GS-9 | B | 20.78 | 21.47 | 22.16 | 22.86 | 23.55 | 24.24 | 24.93 | 25.63 | 26.32 | 27.01 |
|  | O | 31.17 | 32.21 | 33.24 | 34.29 | 34.32 | 34.32 | 34.32 | 34.32 | 34.32 | 34.32 |
| GS-10 | B | 22.88 | 23.64 | 24.41 | 25.17 | 25.93 | 26.70 | 27.46 | 28.22 | 28.99 | 29.75 |
|  | O | 34.32 | 34.32 | 34.32 | 34.32 | 34.32 | 34.32 | 34.32 | 34.32 | 34.32 | 34.32 |
| GS-11 | B | 25.14 | 25.98 | 26.82 | 27.65 | 28.49 | 29.33 | 30.17 | 31.01 | 31.84 | 32.68 |
|  | O | 34.32 | 34.32 | 34.32 | 34.32 | 34.32 | 34.32 | 34.32 | 34.32 | 34.32 | 34.32 |
| GS-12 | B | 30.13 | 31.14 | 32.14 | 33.14 | 34.15 | 35.15 | 36.16 | 37.16 | 38.17 | 39.17 |
|  | O | 34.32 | 34.32 | 34.32 | 34.32 | 34.32 | 34.32 | 34.32 | 34.32 | 34.32 | 34.32 |
| GS-13 | B | 35.83 | 37.03 | 38.22 | 39.41 | 40.61 | 41.80 | 43.00 | 44.19 | 45.39 | 46.58 |
|  | O | 35.83 | 37.03 | 38.22 | 39.41 | 40.61 | 41.80 | 43.00 | 44.19 | 45.39 | 46.58 |
| GS-14 | B | 42.34 | 43.75 | 45.17 | 46.58 | 47.99 | 49.40 | 50.81 | 52.22 | 53.63 | 55.05 |
|  | O | 42.34 | 43.75 | 45.17 | 46.58 | 47.99 | 49.40 | 50.81 | 52.22 | 53.63 | 55.05 |
| GS-15 | B | 49.81 | 51.47 | 53.13 | 54.79 | 56.45 | 58.11 | 59.77 | 61.43 | 63.09 | 64.75 |
|  | O | 49.81 | 51.47 | 53.13 | 54.79 | 56.45 | 58.11 | 59.77 | 61.43 | 63.09 | 64.75 |

NOTE: Locality rates of pay are base pay only for certain purposes--see "Salary Tables for 2005" cover sheet.

# APPENDIX F

Edelman, Combs, Latturner & Goodwin LLC
120 S. LaSalle St, 18th Floor
Chicago, IL 60603-3403

163 Gerry Rd                                        Date:   3/21/2006
Chestnut Hill, MA 02467-3185

Regarding: OSI COLLECTION SVCS, INC  V  TIMOTHY BROWDER
Invoice No:  6

*Services Rendered*

| Date | Staff | Description | Hours | Rate | Charges |
|---|---|---|---|---|---|
| 8/19/2004 | XDC1 | called ct  left vm requested more info | 0 10 | $90 00 | $9 00 |
| 9/13/2004 | XDC1 | spoke w/ ct re: debt, ct will mail needed dox | 0 20 | $90 00 | $18 00 |
| 9/17/2004 | MRT | rev again per dae | 0 20 | $275 00 | $55 00 |
| 10/12/2004 | FRG | t/c client | 0 30 | $225 00 | $67 50 |
| 10/12/2004 | XKP2 | research and locate docs | 0 10 | $100 00 | $10 00 |
| 2/15/2005 | XKP2 | draft client letter and organize docs | 0 30 | $100 00 | $30 00 |
| 2/18/2005 | FRG | conf  DAE re: complaint | 0 10 | $225 00 | $22 50 |
| 2/18/2005 | XKP2 | prep docs for filing complaint in MA, research, sort exhibits, mail via ups to cc | 1 30 | $100 00 | $130 00 |
| 2/21/2005 | FRG | e-mailed complaint to Lefebvre | 0 10 | $225 00 | $22 50 |
| 2/22/2005 | XKP2 | prep complaint approval letter, sort complaint exhibits, mail | 0 40 | $100 00 | $40 00 |
| 2/23/2005 | JOL | work on complaint   OK | 0 30 | $425 00 | $127 50 |
| 2/24/2005 | FRG | t/c C  Lafebvre re: filing complaint | 0 10 | $225 00 | $22 50 |
| 2/28/2005 | FRG | conf  DAE re: signing LeFebvre's name to complaint | 0 10 | $225 00 | $22 50 |
| 2/28/2005 | FRG | t/c client re: approval of complaint | 0 10 | $225 00 | $22 50 |

:delman, Combs, Latturner & Goodwin LLC
Page No :    2

| Date | Initials | Description | Hours | Rate | Amount |
|---|---|---|---|---|---|
| 2/28/2005 | FRG | e-mailed Lefebvre re: DAE's unwillingness to sign complaint | 0 10 | $225 00 | $22 50 |
| 3/07/2005 | XKP2 | prep pro hac motions | 0 40 | $100 00 | $40 00 |
| 3/08/2005 | FRG | letter to client re: fee splitting | 0 10 | $225 00 | $22 50 |
| 3/08/2005 | FRG | letter to client re: fee splitting | 0 10 | $225 00 | $22 50 |
| 3/19/2005 | DAE | prepare discovery | 1 00 | $425 00 | $425 00 |
| 3/22/2005 | JA | drft ltr; call proc serv; prep/send to proc serv for service | 0 50 | $100 00 | $50 00 |
| 3/24/2005 | JA | orgnz docs for binder; dct | 0 40 | $100 00 | $40 00 |
| 4/07/2005 | SW | Docket civil cover sheet | 0 10 | $100 00 | $10 00 |
| 5/10/2005 | SW | Docket corresp OC re: ext time to repond to complaint and 93a letter | 0 10 | $100 00 | $10 00 |
| 5/12/2005 | FRG | conf  SW re: service on the defendant | 0 10 | $225 00 | $22 50 |
| 5/12/2005 | FRG | conf  SW re: service, appearance | 0 20 | $225 00 | $45 00 |
| 5/12/2005 | SW | Update binder with Mass docs, update case info; research ret serv w/ lowell, MA const; docket prohac | 0 80 | $100 00 | $80 00 |
| 5/13/2005 | SW | Call Lowell Mass constable re: ret of serv 5xs, constable to send us ret of serv today | 0 40 | $100 00 | $40 00 |
| 5/25/2005 | CMC | t/c Bill Bogart | 0 30 | $425 00 | $127 50 |
| 5/26/2005 | SW | e-file ret of serv summons; docket same | 0 50 | $100 00 | $50 00 |
| 6/08/2005 | FRG | t/c oc in Boston re: class size | 0 10 | $225 00 | $22 50 |
| 6/08/2005 | SW | Docket Answer & Jury Demand of defendant | 0 10 | $100 00 | $10 00 |
| 6/09/2005 | FRG | conf  DAE re: settlement; e-mailed Lefebvre re: same | 0 20 | $225 00 | $45 00 |
| 6/10/2005 | FRG | revised settlement demand | 0 20 | $225 00 | $45 00 |
| 6/10/2005 | FRG | drafted settlement demand | 0 30 | $225 00 | $67 50 |

| 6/13/2005 | FRG | revisions to settlement demand | 0 10 | $225 00 | $22 50 |
| 6/13/2005 | SW | edit sett offer; prep fax cvr and fax same to OC | 0 20 | $100 00 | $20 00 |
| 6/14/2005 | SW | Docket Settlement offer & response to 93A demand from OC | 0 10 | $100 00 | $10 00 |
| 6/21/2005 | FRG | t/c Bill Bogaert re: settlement | 0 20 | $225 00 | $45 00 |
| 6/22/2005 | SW | Draft 26(a)(1) disclosure; conf FRG same | 0 70 | $100 00 | $70 00 |
| 7/07/2005 | FRG | conf HAP, DAE re: choosing to have case tried by magistrate; e-mailed Lefebvre re: same | 0 20 | $225 00 | $45 00 |
| 7/13/2005 | SW | Draft P's consent to transfer case to magistrate | 0 30 | $100 00 | $30 00 |
| 7/15/2005 | FRG | letter to J Wolf re: consenting to the magistrate | 0 30 | $225 00 | $67 50 |
| 7/15/2005 | SW | Call MA dist ct re: filing Mag Judge Consent; DFt lett of Ocnsent to Mag; edit & conf FRG same | 1 10 | $100 00 | $110 00 |
| 7/18/2005 | FRG | t/c B Bogaert re: settlement, consent to the magistrate judge | 0 10 | $225 00 | $22 50 |
| 7/27/2005 | SW | Edit & e-file P's Consent to Magistrate Judge | 0 50 | $100 00 | $50 00 |
| 7/28/2005 | FRG | letter to client re: settlement | 0 40 | $225 00 | $90 00 |
| 7/28/2005 | FRG | reviewed settlement letter; e-mailed to C Lefebvre | 0 20 | $225 00 | $45 00 |
| 7/28/2005 | SW | Copy FRG Corresp & E-mail | 0 10 | $100 00 | $10 00 |
| 8/01/2005 | SW | Docket Settlement offer acceptance | 0 10 | $100 00 | $10 00 |
| 8/02/2005 | FRG | conf SW re: drafting settlement dox | 0 10 | $225 00 | $22 50 |
| 8/02/2005 | FRG | conf SW re: class notice | 0 10 | $225 00 | $22 50 |
| 8/02/2005 | SW | Draft Class Settlement agreement & Class Notice; conf FRG same | 2 30 | $100 00 | $230 00 |
| 8/03/2005 | SW | Edit & proofread Class Sett Agree & | 2 20 | $100 00 | $220 00 |

Class Notice; Drft prelim & final order

| Date | Initials | Description | Hours | Rate | Amount |
|---|---|---|---|---|---|
| 8/04/2005 | FRG | e-mailed oc re: filing an amended complaint | 0 10 | $225 00 | $22 50 |
| 8/04/2005 | FRG | conf  SW re: settlement dox | 0 10 | $225 00 | $22 50 |
| 8/04/2005 | SW | Proofread & edit class notice, settelemt; prelim order & final order | 1 40 | $100 00 | $140 00 |
| 8/05/2005 | FRG | worked on class settlement papers | 0 50 | $225 00 | $112 50 |
| 8/08/2005 | SW | Redraft class settlement agreement with new model; begin re-draft of class notice | 0 90 | $100 00 | $90 00 |
| 8/09/2005 | SW | Proofread & edit class sett agreement; redraft Class Notice; take call from Browder re: status case | 1 10 | $100 00 | $110 00 |
| 8/10/2005 | FRG | t/c client re: settlement | 0 10 | $225 00 | $22 50 |
| 8/10/2005 | SW | proofread & edit class notice; retype same due to corrupt file; re draft prelim app order | 2 80 | $100 00 | $280 00 |
| 8/16/2005 | SW | Docket date of staus hearing | 0 10 | $100 00 | $10 00 |
| 8/18/2005 | JB | Conf CMC re: elec password for e-filing in Massachusetts | 0 10 | $105 00 | $10 50 |
| 8/23/2005 | SW | Docket Order reassign case to magistrate judge | 0 10 | $100 00 | $10 00 |
| 9/01/2005 | SW | Proofread prelim app order & final order | 0 60 | $100 00 | $60 00 |
| 9/02/2005 | CMC | work on settlement docs | 0 30 | $425 00 | $127 50 |
| 9/02/2005 | FRG | class settlement papers | 1 50 | $225 00 | $337 50 |
| 9/02/2005 | FRG | e-mailed am  Cmplt to oc | 0 10 | $225 00 | $22 50 |
| 9/02/2005 | FRG | motion for leave to file amended complaint | 0 20 | $225 00 | $45 00 |
| 9/06/2005 | JB | Confs SW re: electronic filing of amended complaint | 0 20 | $105 00 | $21 00 |
| 9/06/2005 | SW | e-file motion for leave to file amended compalint, conf JB2 same | 1 50 | $100 00 | $150 00 |

Edelman, Combs, Latturner & Goodwin LLC

Page No :    5

| 9/07/2005 | CMC | work on resp to mot to stay | 0 50 | $425 00 | $212 50 |
|---|---|---|---|---|---|
| 9/07/2005 | SW | Docket e-filed motion for leave to file and real sign of same motion | 0 20 | $100 00 | $20 00 |
| 9/08/2005 | FRG | revisions to s/a; e-mailed oc re: same | 0 50 | $225 00 | $112 50 |
| 9/12/2005 | FRG | letter to Judge Bowler re: settlement; e-mailed oc re: same | 0 30 | $225 00 | $67 50 |
| 9/29/2005 | FRG | tc client's bankruptcy attorney; e-mailed schedule language to her | 0 40 | $225 00 | $90 00 |
| 10/12/2005 | SW | Research if we have gotten notice of recent court dates on Mass ECF website | 0 10 | $100 00 | $10 00 |
| 10/21/2005 | SW | Check Mass ECF website for newe case activity | 0 10 | $100 00 | $10 00 |
| 10/27/2005 | SW | check for activity in case on MASS ECF Website | 0 10 | $100 00 | $10 00 |
| 10/31/2005 | FRG | tc Bill Bogaert re: settlement | 0 10 | $225 00 | $22 50 |
| 11/02/2005 | FRG | e-mailed, tc oc re: preliminary approval motion; revised s/a; e-mailed revised s/a to oc | 0 30 | $225 00 | $67 50 |
| 11/03/2005 | FRG | e-mailed s/a to client | 0 10 | $225 00 | $22 50 |
| 11/03/2005 | JA | prep settlmnt agreemnt; draft ltr; send docs to clnt | 0 70 | $100 00 | $70 00 |
| 11/11/2005 | SW | Check Mass ECF website for new case activity | 0 10 | $100 00 | $10 00 |
| 11/11/2005 | SW | Docket assented motion enlarge time & order granting same | 0 10 | $100 00 | $10 00 |
| 11/15/2005 | SW | Docket Sett Agreement | 0 10 | $100 00 | $10 00 |
| 11/17/2005 | FRG | e-mailed oc re: client's signature | 0 10 | $225 00 | $22 50 |
| 11/17/2005 | FRG | printed out d's signature on s/a; signed s/a; e-mailed oc re: his signature on s/a | 0 10 | $225 00 | $22 50 |
| 11/18/2005 | FRG | prelimnary approval motion; conf TLG re: same; conf SW re: filing the motion | 2 70 | $225 00 | $607 50 |
| 11/18/2005 | TLG | conf FRG | 0 20 | $385 00 | $77 00 |

| 11/23/2005 | FRG | reviewed s/a for compliance with CAFA; e-mailed oc re: same | 0.20 | $225 00 | $45 00 |
|---|---|---|---|---|---|
| 11/30/2005 | FRG | printed out, reviewed CAFA re: 60 day opt-out requirement for class members | 0 30 | $225 00 | $67 50 |
| 11/30/2005 | FRG | tc ocs re: Judge Bowler's minute order | 0 20 | $225 00 | $45 00 |
| 12/01/2005 | FRG | e-mailed oc re: CAFA, Judge's minute order | 0 10 | $225 00 | $22 50 |
| 12/05/2005 | FRG | tc M  Freitas re: asking Judge Bowler to enter dates on preliminary approval order | 0 10 | $225 00 | $22 50 |
| 12/13/2005 | SW | docket Letter from Freitas to Gonzales & Reilly re: notification of class action settlement | 0 10 | $100 00 | $10 00 |
| 12/22/2005 | JOL | tc Judge's clerk; review of settlement documents; tc opposing counsel asst; email opposing counsel re preliminary approval order | 1 20 | $425 00 | $510 00 |
| 12/22/2005 | SW | 2 Conferences re: w/ JOL Prelim Approval Order | 0 20 | $100 00 | $20 00 |
| 12/22/2005 | SW | Copy Prlim Order; sett agree & class notice for JOL | 0 30 | $100 00 | $30 00 |
| 12/27/2005 | JOL | 2 tc's opposing consel; revise final order; email | 0 70 | $425 00 | $297 50 |
| 12/27/2005 | SW | Dft email to OC re: JOL's instructions re: prelim Approval order | 0 30 | $100 00 | $30 00 |
| 12/27/2005 | SW | Make JOL's changes to Prelim Approval Order | 0 20 | $100 00 | $20 00 |
| 1/03/2006 | FRG | Conference re: adding dates to class notice and putting notice on web (w/ SW) | 0 20 | $225 00 | $45 00 |
| 1/03/2006 | SW | Edit class notice to reflect dates in prelim approval order, conf FRG same | 0 50 | $100 00 | $50 00 |
| 1/04/2006 | FRG | revised class notice to include opt-out date and date of fairness hearing; tc M Freitas re: same | 0 30 | $225 00 | $67 50 |
| 1/05/2006 | SW | Docket Prliminary Approval Order, entered | 0 10 | $100 00 | $10 00 |

:delman, Combs, Latturner & Goodwin LLC
Page No :    7

12 22 05

| Date | Initials | Description | Hours | Rate | Amount |
|------|----------|-------------|-------|------|--------|
| 1/06/2006 | SW | Check Mass ECF for any new activity in case that we have not recieved | 0 10 | $100 00 | $10 00 |
| 1/13/2006 | FRG | tc M  Freitas re: mailing of notice, receipt of claim forms; conf  MRT re: same; added dates and our address to class notice | 0 50 | $225 00 | $112 50 |
| 1/16/2006 | FRG | tc M  Freitas re: definition of class period | 0 20 | $225 00 | $45 00 |
| 1/17/2006 | FRG | reviewed emergency motion; tc M  Freitas re: same | 0 20 | $225 00 | $45 00 |
| 1/17/2006 | FRG | revised s/a; amended preliminary approval order | 0 50 | $225 00 | $112 50 |
| 1/17/2006 | SW | Check for new case activity on Mass ECF website | 0 10 | $100 00 | $10 00 |
| 1/18/2006 | FRG | tc M  Freitas re: emergency motion; reviewed revisions to the motion, class notice | 0 50 | $225 00 | $112 50 |
| 1/20/2006 | FRG | e-mailed class notice to client | 0 10 | $225 00 | $22 50 |
| 1/23/2006 | SW | docket Joint Emergency Motion to Correct Scrivener's Error & Order granting Motion to Correct | 0 10 | $100 00 | $10 00 |
| 1/30/2006 | FRG | reviewed memo to paralegals for handling class calls | 0 10 | $225 00 | $22 50 |
| 1/30/2006 | SW | copy and distribute class memo to paralegals | 0 20 | $100 00 | $20 00 |
| 1/30/2006 | SW | Draft & edit class notice memo for paralegals | 0 90 | $100 00 | $90 00 |
| 1/31/2006 | SW | class call | 0 10 | $100 00 | $10 00 |
| 2/01/2006 | AS | Telephone conference with class member re: settlement | 0 20 | $100 00 | $20 00 |
| 2/03/2006 | SW | Conference re: Claim forms returned to us as not deliverable | 0 10 | $100 00 | $10 00 |
| 2/06/2006 | FRG | tc Class member | 0 10 | $225 00 | $22 50 |

| Date | | Description | | | |
|---|---|---|---|---|---|
| 2/06/2006 | SW | Research addresses for undeliverable class notices | 0 20 | $100 00 | $20 00 |
| 2/06/2006 | SW | Docket 7 Claim forms in redwall as undeliverable | 0 20 | $100 00 | $20 00 |
| 2/07/2006 | SW | SCan Claim form to send to OC & re-mail 2 claim forms to forwarding address | 0 20 | $100 00 | $20 00 |
| 2/07/2006 | SW | Organize into redwalls incoming claim forms | 0 20 | $100 00 | $20 00 |
| 2/09/2006 | SW | re-mail claim form to forwarding address | 0 10 | $100 00 | $10 00 |
| 2/24/2006 | SW | scan and save claim form for FRG to send to OC | 0 20 | $100 00 | $20 00 |
| 3/14/2006 | FRG | tc class member re: settlement | 0 10 | $225 00 | $22 50 |
| 3/14/2006 | TK | 4 docs | 0 30 | $100 00 | $30 00 |
| 3/15/2006 | TK | | 0 10 | $100 00 | $10 00 |
| 3/16/2006 | FRG | e-mailed client re: status of case | 0 10 | $0 00 | $0 00 |
| 3/17/2006 | FRG | e-mailed M Freitas re: final approval memo | 0 10 | $0 00 | $0 00 |
| 3/20/2006 | FRG | final approval memo; tc M Freitas re: same | 1 50 | $225 00 | $337 50 |
| 3/20/2006 | FRG | final approval memo | 0 40 | $225 00 | $90 00 |
| 3/21/2006 | FRG | final approval memo | 1 10 | $225 00 | $247 50 |

Total Fees    $8,823 00

**Expenses**

| Start Date | Description | Quantity | Charges |
|---|---|---|---|
| 12/01/2004 | Copying | 1 00 | $1 00 |
| 2/22/2005 | Postage | 1 00 | $1 29 |
| 2/28/2005 | Filing fee | 1 00 | $250 00 |
| 3/07/2005 | Pro hac vice | 1 00 | $150 00 |

:delman. Combs, Latturner & Goodwin LLC
Page No.:    9

| | | | |
|---|---|---|---|
| 3/11/2005 | Postage | 1 00 | $0 37 |
| 3/16/2005 | Postage | 1 00 | $2 58 |
| 3/16/2005 | Postage | 1 00 | $5 42 |
| 3/22/2005 | Serve summons | 1 00 | $85 00 |
| 3/22/2005 | Copying | 1 00 | $10 75 |
| 3/22/2005 | Postage | 1 00 | $1 29 |
| 3/26/2005 | UPS | 1 00 | $13 90 |
| 5/09/2005 | Copying | 1 00 | $0 50 |
| 5/26/2005 | Copying | 1 00 | $0 50 |
| 6/02/2005 | Copying | 1 00 | $0 25 |
| 6/06/2005 | Copying | 1 00 | $0 25 |
| 6/06/2005 | Copying | 1 00 | $1 00 |
| 6/06/2005 | Copying | 1 00 | $2 25 |
| 7/28/2005 | Copying | 1 00 | $0 25 |
| 8/04/2005 | Copying | 1 00 | $0 75 |
| 8/11/2005 | Copying | 1 00 | $0 25 |
| 8/18/2005 | Copying | 1 00 | $0 25 |
| 8/19/2005 | Copying | 1 00 | $0 25 |
| 9/06/2005 | Copying | 1 00 | $3 75 |
| 9/07/2005 | Copying | 1 00 | $3 75 |
| 9/12/2005 | Copying | 1 00 | $0 75 |
| 9/12/2005 | Postage | 1 00 | $1 11 |
| 11/03/2005 | Postage | 1 00 | $1 66 |
| 11/03/2005 | Copying | 1 00 | $5 00 |

Edelman, Combs, Latturner & Goodwin LLC
Page No : 10

| 11/04/2005 | Copying | 1 00 | $0 75 |
| 11/08/2005 | Copying | 1 00 | $1 00 |
| 11/18/2005 | Copying | 1 00 | $0 50 |
| 11/18/2005 | Copying | 1 00 | $0 50 |
| 11/21/2005 | Copying | 1 00 | $0 25 |
| 11/22/2005 | Copying | 1 00 | $1 50 |
| 12/22/2005 | Equitrac | 0 00 | $2 25 |
| 12/22/2005 | Equitrac | 0 00 | $3 00 |
| 12/22/2005 | Equitrac | 0 00 | $2 25 |
| 12/22/2005 | Equitrac | 0 00 | $1 75 |
| 12/22/2005 | Equitrac | 0 00 | $2 50 |
| 1/06/2006 | Equitrac | 0 00 | $1 00 |
| 1/18/2006 | Equitrac | 0 00 | $6 00 |
| 1/18/2006 | Phone charge (Sprint) | 1 00 | $2 75 |
| 1/19/2006 | Equitrac | 0 00 | $0 25 |
| 1/30/2006 | Equitrac | 0 00 | $3 75 |
| 2/06/2006 | Postage | 1 00 | $0 63 |
| 2/06/2006 | Postage | 2 00 | $1 26 |
| 2/07/2006 | Postage | 2 00 | $1 26 |
| 2/09/2006 | Postage | 1 00 | $0 63 |
| 3/15/2006 | Postage | 1 00 | $0 63 |

Total Expenses    $578 53

Total New Charges    $9,401 53

### *Staff Summary*

| Name | Position | Hours | Rate | Fees |
|------|----------|-------|------|------|
| Alec Smith | Paralegal | 0 20 | $100 00 | $20 00 |
| Cathleen M. Combs | Partner | 1 10 | $425 00 | $467 50 |
| Daniel A. Edelman | Partner | 1 00 | $425 00 | $425 00 |
| Francis R. Greene | Associate | 17 80 | $225 00 | $4,005 00 |
| Francis R. Greene | Associate | 0 20 | $0 00 | $0 00 |
| Jared Andersen | Paralegal Supervisor | 1 60 | $100 00 | $160 00 |
| Jeff Becker | Paralegal Supervisor | 0 30 | $105 00 | $31 50 |
| James O. Latturner | Partner | 2 20 | $425 00 | $935 00 |
| Michelle R. Teggelaar | Partner | 0 20 | $275 00 | $55 00 |
| | Paralegal Supervisor | 23 30 | $100 00 | $2,330 00 |
| Theresa Kinkley | Paralegal | 0 40 | $100 00 | $40 00 |
| Tara L. Goodwin | Partner | 0 20 | $385 00 | $77 00 |
| Douglas Conway | | 0 30 | $90 00 | $27 00 |
| Katarina Pamucar | Paralegal | 2 50 | $100 00 | $250 00 |
| | | Tot Hrs:  51 30 | | |

# EXHIBIT B

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| TIMOTHY BROWDER, | ) | |
| | ) | |
| Plaintiff, | ) | 1:05cv10462 |
| | ) | Magistrate Judge Bowler |
| v. | ) | Filed 3/10/05 |
| | ) | |
| OSI COLLECTION SERVICES, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## FINAL APPROVAL ORDER

1.    On December 22, 2005, this Court preliminarily approved the Class Settlement Agreement reached between Plaintiff Timothy Browder and Defendant OSI Collection Services, Inc. The Court approved a form of notice for mailing to the class. The Court is informed that actual notice was sent by first-class mail to 462 class members (counting couples and other joint persons as a single class member). A total of 82 envelopes were returned by the United States Postal Service marked not deliverable with no forwarding addresses available, and 8 envelopes were returned and re-mailed to a forwarding address. No class members requested exclusion and no objections were filed or received.

2.    On March 27, 2006, the Court held a fairness hearing to which class members, including any with objections, were invited. The Court, being fully advised in the premises, hereby orders:

3.    The Court finds that the class is appropriate under Fed. R. Civ. P. 23.

4.    The Court finds that the provisions for notice to the class satisfy the requirements of Fed. R. Civ. P. 23 and due process.

1

5.    The Court finds that the settlement is fair and reasonable, and hereby approves the Class Settlement Agreement submitted by the parties, including the release. Defendant shall pay the following:

a.    $1,020 to Plaintiff Browder;

b.    $9,240 divided *pro rata* among class members who submit claim forms, to be paid by check, void 60 days after issuance.

c.    $10,500 to Class counsel for attorneys' fees and costs.

6.    Plaintiff and the members of the class grant Defendant the following releases:

a.    Plaintiff hereby remises, releases and forever discharges OSI COLLECTION SERVICES, INC. and its present or former partners, members, principals, insurers, parents, officers, directors, representatives, employees, agents, servants, predecessors, successors, subsidiaries, affiliates, shareholders, heirs, executors, administrators, and assigns (hereinafter collectively "RELEASED PARTIES") of and from all causes of action, suits, claims demands, liabilities, judgments, debts, charges, and damages including any indemnity claims for payment of attorney's fees and costs, whatsoever for anything that occurred from the beginning of time up through and including the date the Court gives final approval to this Agreement, in law or in equity,  of any kind or nature whatsoever, arising out of the allegations made in the action styled as *Timothy Browder v. OSI Collection Services, INC,* 1:05cv10462.

b.    Each class member not opting out releases and discharges the RELEASED PARTIES of and from all causes of action, suits, claims and demands, relating to the collection letter attached as <u>Exhibit A</u>. This release is conditioned upon Defendant meeting

2

its obligations under the Agreement.

           c.     This release is in no way intended to release Defendant's claims for payment of the class members' debts or the class members' claims or defenses regarding (1) whether the debt is in fact actually owed, (2) the crediting of payments on such debts, (3) the proper reporting of debts to credit bureaus.

           7.     The Court finds the Settlement Agreement fair and made in good faith.

           8.     The Court dismisses the claims of Plaintiff and the class against Defendant and the Released Parties with prejudice and without costs (other than what has been provided for in the Settlement Agreement).

           10.     Defendant shall pay Plaintiff's counsel $10,500.00 in attorney's fees and expenses.

           11.     The Court retains jurisdiction over the interpretation, enforcement and implementation of the Settlement Agreement and of this Order.

DATE: _____        ENTER: _____
                                  The Honorable Marianne B. Bowler
                                  United States Magistrate Judge